**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMODITY FUTURES TRADING
COMMISSION,

                     Plaintiff,

          v.                                          Case No. 1:19-cv-05631-JGK

CONTROL-FINANCE LIMITED AND
BENJAMIN REYNOLDS,

                     Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**LEAVE TO SERVE DEFENDANT BENJAMIN REYNOLDS BY PUBLICATION AND**
**FOR ADDITIONAL TIME TO COMPLETE SERVICE**

Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Washington, DC 20581
Telephone:  (202) 418-6044

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................1

        A.      Summary of the Case .................................................................................1

        B.      The Incorporation of Control-Finance ....................................................2

        C.      The Commission Has Diligently Attempted to Serve Reynolds ............3

        D.      The Commission's Proposed Method for Alternative Service of Process.............5

III.    ARGUMENT .........................................................................................................6

        A.      Alternative Service Is Warranted and Within the Court's Discretion ..................6

                1.      The Circumstances of This Case Necessitate the Court's Intervention......8

                2.      The Proposed Service Method Is Not Prohibited By International Agreement .................................................................................9

                3.      Service on Reynolds by Publication Will Provide Reasonable Notice and Comports with Due Process ...................................... 10

        B.      Good Cause Exists to Extend the Time Limit for Service.................................... 13

IV.     CONCLUSION.................................................................................................... 14

CERTIFICATE OF COMPLIANCE ......................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*BP Products N. Am., Inc. v. Dagra*,
    236 F.R.D. 270 (E.D. Va. 2006) ................................................................... 11, 12

*DEF v. ABC*,
    366 F. App'x 250 (2d Cir. 2010) ....................................................................... 13

*Devi v. Rajapaska*,
    No. 11-cv-6634, 2012 WL 309605 (S.D.N.Y. Jan. 31, 2012) .................................. 8

*In re BRF S.A. Sec. Litig.*,
    No. 18-cv-2213, 2019 WL 257971 (S.D.N.Y. Jan. 18, 2019) .................................. 8

*In re GLG Life Tech Corp. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012) ....................................................................... 6-7

*In re Veon Ltd. Sec. Litig.*,
    No. 15-cv-08672, 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) .................................. 13-14

*KPN B.V. v. Corcyra D.O.O.*,
    No. 08-cv-1549, 2009 WL 690119 (S.D.N.Y. Mar. 16, 2009) .......................................... 7, 11

*Lewis v. Madej*,
    No. 15-cv-2676, 2015 WL 6442255 (S.D.N.Y. Oct. 23, 2015) ...................................... 13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ......................................................................................... 11

*Payne v. McGettigan's Mgmt. Servs. LLC*,
    No. 19-cv-1517, 2019 WL 6647804 (S.D.N.Y. Nov. 19, 2019) ...................................... 7

*Philip Morris Inc. v. Veles Ltd.*,
    No. 06-cv-2988, 2007 WL 725412 (S.D.N.Y. 2007) ............................................. 10

*S.E.C. v. Anticevic*,
    No. 05-cv-6991, 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009) ....................................... 7, 9, 10

*S.E.C. v. Lines*,
    No. 07-cv-11387, 2009 WL 3179503 (S.D.N.Y. Oct. 2, 2009) ...................................... 9

*S.E.C. v. Shehyn*,
  No. 04-cv-2003, 2008 WL 6150322 (S.D.N.Y. Nov. 26, 2008)............................................ 11

*S.E.C. v. Tome*,
  833 F.2d 1086 (2d Cir. 1987)........................................................................... 11, 12

*Smith v. Islamic Emirate of Afghanistan*,
  No. 01-cv-10132, 2001 WL 1658211 (S.D.N.Y. Dec. 26, 2001) ...................................... 7, 11

*United States v. Lebanese Canadian Bank SAL*,
  285 F.R.D. 262 (S.D.N.Y. 2012) ...................................................................... 7, 8

*United States v. Machat*,
  No. 08-cv-7936, 2009 WL 3029303 (S.D.N.Y. Sept. 21, 2009) ...................................... 9, 13

## RULES

Fed. R. Civ. P. 4(f)...................................................................................... 6

Fed. R. Civ. P. 4(m) ..................................................................................... 13

Fed. R. Civ. P. 4(m) advisory committee's note to 2016 amendment ........................................ 13

Fed. R. Civ. P. 6(b)(1)(A) ................................................................................ 14

United Kingdom Civil Procedure Rule 6.15 .................................................................. 10

## TREATIES

Declarations by the United Kingdom on the Hague Service Convention,
  https://www.hcch.net/en/instruments/conventions/status-
  table/notifications/?csid=427&disp=resdn (last visited Dec. 23, 2019) ........................................ 9

Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638 ........................ 8-9

## I.      INTRODUCTION

Plaintiff Commodity Futures Trading Commission (the "Commission") submits this Memorandum in support of its Motion for Leave to Serve Defendant Benjamin Reynolds ("Reynolds") by Publication and for Additional Time to Complete Service.  As detailed more fully below and in the accompanying Declaration of Julia C. Colarusso ("Colarusso Decl."), the Commission has undertaken extensive and expensive efforts to try to locate and serve Reynolds.  Upon filing this action, the Commission attempted to personally serve Reynolds at his last known address in the United Kingdom as well as by email, both to no avail.  The Commission has since learned that Reynolds likely falsified his address in the application he filed with the U.K. government to incorporate Defendant Control-Finance Limited ("Control-Finance" and together with Reynolds, "Defendants"), and despite diligent efforts the Commission has not been able to ascertain his current location.  Reynolds has also actively worked to conceal his whereabouts by disabling Control-Finance's website and the email addresses and telephone number he utilized in connection with the scheme at issue in this case.

Under these circumstances, good cause exists to permit the Commission to serve Reynolds by publication in *The Daily Telegraph* pursuant to Federal Rule of Civil Procedure 4(f)(3) and to grant the Commission sixty days from the date of the Court's order on this motion in which to effect service on Reynolds and Control-Finance.

## II.      FACTUAL BACKGROUND

### A.      Summary of the Case

On June 17, 2019, the Commission filed a Complaint against Reynolds and Control-Finance seeking injunctive and other equitable relief, as well as the imposition of civil monetary penalties, for violations of the Commodity Exchange Act, 7 U.S.C. §§ 1-26 (2018), and the

Commission Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2019).  ECF No. 1.  On

June 18, 2019, the Commission issued a press release through its website announcing the filing.

Ex. 1 to Colarusso Decl.  The Complaint alleges that from at least May 2017 through October

2017, Defendants operated a fraudulent virtual currency scheme by soliciting customers to

deposit Bitcoin with them for the purpose of trading, falsely representing that they were earning

trading profits on behalf of their customers, and then misappropriating the Bitcoin that was

entrusted to them.  Compl. ¶¶ 1-10.  Defendants operated their scheme primarily through their

public website, www.control-finance.com (the "Control-Finance Website"), various social media

accounts (including Facebook, YouTube, and Twitter, among others), and email

communications, all of which they used to make material misrepresentations and omissions to

prospective and existing customers to entice them to open Control-Finance accounts and deposit

their Bitcoin with Defendants.  *Id*. ¶¶ 26-33.

Through their lies, Defendants ultimately solicited and misappropriated at least

22,858.822 Bitcoin—which reached a valuation of at least $147 million by October 31, 2017—

from more than 1,000 customers worldwide, including at least 169 who are believed to reside

within the United States.  *Id*. ¶¶ 1, 40, 62-69; Colarusso Decl. ¶ 3.  Defendants abruptly

terminated their operations in September 2017 by removing the Control-Finance Website from

the Internet and deleting advertising content from their social media accounts.  Compl. ¶ 8.

While Defendants fraudulently represented that they would resume operations and make all

customers whole by returning their Bitcoin deposits, they instead worked to launder the Bitcoin

through thousands of circuitous blockchain transactions.  *Id*. ¶¶ 9-10.

**B.     The Incorporation of Control-Finance**

Reynolds incorporated Control-Finance with the Registrar of Companies for England and

Wales (the "U.K. Registrar") on September 8, 2016.  Colarusso Decl. ¶ 5.  In the incorporation

application Reynolds filed, he listed Control-Finance's "Registered Office" address as 17 Marble

Street, Manchester, England M2 3AW.  Ex. 2 to Colarusso Decl.  In the section of the

application relating to the company's proposed officers, Reynolds listed himself as Control-

Finance's sole Director and represented his "service address" to be 12 Richmond Street,

Manchester, England M1 3NB.  *Id*.  In the section of the application asking for his

"Country/State Usually Resident," Reynolds listed "England."  *Id*.  He also listed his nationality

as "British."  *Id*.

**C.**     **The Commission Has Diligently Attempted to Serve Reynolds.**

Shortly after filing the Complaint, on or about July 17, 2019, the Commission retained

Legal Language Services ("LLS"), a litigation support firm, to arrange for service on Reynolds

and Control-Finance through the Convention on the Service Abroad of Judicial and Extrajudicial

Documents in Civil and Commercial Matters (the "Hague Service Convention").  Colarusso

Decl. ¶ 8.  Pursuant to Article 5(b) of the Convention, LLS engaged a solicitor authorized by the

Central Authority for England and Wales to personally serve Reynolds and Control-Finance at

their respective addresses listed in the incorporation application Reynolds filed with the U.K.

Registrar.  *Id*.

On July 31, 2019, a process server operating under the solicitor's supervision attempted

to personally serve Reynolds at 12 Richmond Street, Manchester, England M1 3NB—the

address he listed as his "service address" in Control-Finance's incorporation papers.  *Id*. ¶ 9.

Upon arriving in Manchester, the process server discovered that the address did not actually

exist, or at best corresponded to an office building that had long been abandoned and boarded-

up.  *Id*.  The process server also spent considerable time canvassing the area and spoke with

several people who were entering or exiting nearby buildings.  *Id*.  None of them had heard of

Reynolds or Control-Finance, and none of them could identify the address Reynolds had used in

the incorporation papers.  *Id*.  The Commission paid $2,695 to LLS for this service attempt.[1]  *Id*.

¶ 11.

On July 17, 2019, a Commission staff member also attempted to email the Complaint, the

Summonses, the Electronic Case Filing Rules for the Southern District of New York, and the

Court's Individual Practices to the only known email addresses associated with Reynolds and

Control-Finance:  admin@control-finance.com and support@control-finance.com.  *Id*. ¶ 12.  The

staff member received a bounce-back message indicating that the email could not be delivered

because of an "unknown address error."  *Id*.

The Commission then attempted to find alternative addresses for Reynolds.  *Id*. ¶ 13.

Beginning in September 2019 and continuing through December 2019, Commission staff

---

[1] Also on July 31, 2019, the process server hand-delivered a set of service papers to the

"Registered Office" address that Control-Finance listed in its application with the U.K. Registrar.

Colarusso Decl. ¶ 10.  The tenant of the building located at that address informed the process

server that there was no one associated with Control-Finance present there and that the use of the

address by Control-Finance had not been authorized.  *Id*.  The U.K. Registrar had previously

dissolved Control-Finance in February 2018 on the grounds that the company was no longer

carrying on business.  *Id*. ¶ 7.  The Commission is not at this time seeking leave to serve Control-

Finance by publication.  However, because the Commission is still in the process of confirming

what additional actions, if any, it may need to take to perfect service on Control-Finance given

the company's current status as a defunct entity, the Commission requests that it also receive

additional time to serve Control-Finance.

communicated with staff at a foreign financial regulatory agency in Europe to try to determine Reynolds's physical location. *Id*. While that agency conducted various searches, ultimately it was unable to uncover any new addresses associated with Reynolds. *Id*.

The Commission also learned from investors based in South Korea that the Ulsan District Prosecutors' Office in South Korea is investigating the scheme run by Control-Finance. *Id*. ¶ 14. Commission staff spoke with a contact in South Korea's Supreme Prosecutors' Office about that investigation in October 2019. *Id*. Through additional communications with the Supreme Prosecutors' Office, the Commission understands that the investigation in South Korea is ongoing, but to date the prosecution team there has not been able to locate Reynolds. *Id*.

In addition to the Commission's attempts to personally serve Reynolds, on September 12, 2019, Commission staff members also attempted to call the phone number previously listed on the Control-Finance Website. *Id*. ¶ 15. A ringing tone was briefly heard and then the line was disconnected. Later, on November 15, 2019, the Commission mailed copies of the Summonses, Complaint, and all other documents that had been filed in the case to that point to Reynolds at his purported "service address" in Manchester via UPS and USPS First-Class International Registered Mail. *Id*. ¶ 16. UPS could not locate the address and returned the package to the Commission as undeliverable. *Id*. To date, the Commission has not received any indication from the Postal Service that the registered mailing was delivered. *Id*. It also appears that Reynolds has ceased using any of Control-Finance's social media accounts. *Id*. ¶ 17.

Accordingly, despite the Commission's efforts, Reynolds's whereabouts are currently unknown. *Id*. ¶ 18.

**D.     The Commission's Proposed Method for Alternative Service of Process**

The Commission proposes serving Reynolds by publishing a notice in the print edition of

*The Daily Telegraph* about the pendency of this action in the form submitted as Exhibit 4 to the

Colarusso Decl.  The proposed notice would include a link to the section of the Commission's

website where a copy of the Complaint is posted.  If permitted, the Commission would publish

this notice once a week for four consecutive weeks, to ensure the greatest likelihood that

Reynolds receives actual notice of the action pending against him.  *The Daily Telegraph* is a

national British daily broadsheet newspaper published in London and distributed across the

United Kingdom.  It publishes legal ads and notices in print and is circulated in Manchester,

England—the city of Reynolds's last-known address.  Colarusso Decl. at ¶ 19.[2]

### III.   <u>ARGUMENT</u>

**A.    Alternative Service Is Warranted and Within the Court's Discretion.**

Federal Rule of Civil Procedure 4(f) governs service of process on individuals located in

foreign countries and provides three primary ways service may be completed.  First, Rule 4(f)(1)

permits service through "any internationally agreed means of service that is reasonably

calculated to give notice," such as the Hague Service Convention.  Second, if there is no

internationally agreed means, or if an international agreement allows but does not specify other

means, Rule 4(f)(2) permits service "by a method that is reasonably calculated to give notice,"

such as letters rogatory or the procedures prescribed by the law of the foreign country for service

in that country in an action in its courts of general jurisdiction.  Finally, Rule 4(f)(3) permits

service "by other means not prohibited by international agreement, as the court orders."  Here,

the Commission requests that the Court order alternative service of process under Rule 4(f)(3).

"Courts have repeatedly recognized that 'there is no hierarchy among the subsections in

---

[2] The Commission also proposes that Reynolds's deadline to respond to the Complaint should be twenty-one days from the date of the last publication in *The Daily Telegraph*.

Rule 4(f).'" *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012) (quoting *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012)).  "Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." *KPN B.V. v. Corcyra D.O.O.*, No. 08-cv-1549, 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) (Koeltl, J.) (quoting *Ehrenfeld v. Mahfouz*, No. 04-cv-9641, 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005)).  Rule 4(f)(3) was "'adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries,' and what constitutes appropriate service will vary depending upon the particular circumstances of the case." *Smith v. Islamic Emirate of Afghanistan*, No. 01-cv-10132, 2001 WL 1658211, at *2 (S.D.N.Y. Dec. 26, 2001) (quoting *In re Int'l Telemedia Ass'n, Inc.*, 245 B.R. 713, 719 (N.D. Ga. 2000)).  Accordingly, "[t]he decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.'" *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)); *see also Payne v. McGettigan's Mgmt. Servs. LLC*, No. 19-cv-1517, 2019 WL 6647804, at *1 (S.D.N.Y. Nov. 19, 2019) ("A court is afforded wide discretion in ordering service of process under Rule 4(f)(3).").

Pursuant to Rule 4(f)(3), "a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *S.E.C. v. Anticevic*, No. 05-cv-6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (citations omitted).  In this case, service on Reynolds by publication would not offend U.K. law or violate any international

agreement.  In addition, Reynolds has actively concealed his whereabouts, and the Commission has exhausted all available avenues for serving him personally.  Under these circumstances, service by publication is an approach reasonably calculated to apprise Reynolds of the pendency of this action.

1.     **The Circumstances of This Case Necessitate the Court's Intervention.**

In addition to the requirements set forth above, before authorizing service under Rule 4(f)(3), some courts have also required a showing that (1) the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) the circumstances are such that the court's intervention is necessary.  *Lebanese Canadian Bank SAL*, 285 F.R.D. at 267.  In particular, in cases involving service on a person residing in a country that is a signatory to the Hague Service Convention, some courts have imposed a requirement that litigants first attempt service by means of the Convention before seeking court-ordered alternative service under section 4(f)(3).  *See, e.g.*, *Devi v. Rajapaska*, No. 11-cv-6634, 2012 WL 309605, at *2 (S.D.N.Y. Jan. 31, 2012).  However, other courts have observed that "those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement."  *In re BRF S.A. Sec. Litig.*, No. 18-cv-2213, 2019 WL 257971, at *2 (S.D.N.Y. Jan. 18, 2019) (citing cases).  Nevertheless, to the extent these additional requirements apply, the Commission satisfies them.

The Commission attempted to personally serve Reynolds in Manchester, England via means approved by the Hague Service Convention at the service address he provided to the U.K. Registrar, to no avail.  Because that address proved to be invalid and the Commission cannot uncover any other physical address associated with Reynolds, the Hague Service Convention—assuming that Reynolds is living in a country that is a signatory—does not govern the Commission's continued efforts to serve him.  By its own terms, the Convention does "not apply

8

where the address of the person to be served with the document is not known."  Hague Service

Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638; *see also S.E.C. v. Lines*, No. 07-

cv-11387, 2009 WL 3179503, at *3 (S.D.N.Y. Oct. 2, 2009) ("As Article I of the Hague

Convention quite understandably recognizes, it shall not apply where the address of the person to

be served with the document is not known." (internal quotation marks omitted)); *United States v.*

*Machat*, No. 08-cv-7936, 2009 WL 3029303, at *3 (S.D.N.Y. Sept. 21, 2009) (Koeltl, J.)

("While the Government believes that Machat is located in London, England, no current address

is known and therefore Machat cannot be served under the Hague Convention procedures.").  At

this juncture, in light of Reynolds's deliberate efforts to dismantle Control-Finance and its online

presence and to seemingly falsify his address information, the Court's intervention is necessary

because the Commission has no other means by which to effect service.

      **2.**      **The Proposed Service Method Is Not Prohibited By International**
                    **Agreement.**

In his application to incorporate Control-Finance, Reynolds represented that he had a

"service address" in Manchester, England and identified himself as a British national.  He further

identified his "Country/State Usually Resident" as England.  Accordingly, it is reasonable to

analyze this requirement assuming that Reynolds is in the United Kingdom.  Nothing in the

Hague Service Convention prohibits service by publication, and the United Kingdom, as a

signatory, has not explicitly objected to this method of service in its declarations pursuant to the

Convention.  *See* Declarations by the United Kingdom on the Hague Service Convention,

https://www.hcch.net/en/instruments/conventions/status-

table/notifications/?csid=427&disp=resdn (last visited Dec. 23, 2019).  Indeed, other district

courts have authorized service by publication in countries who are parties to the Hague Service

Convention.  *See Anticevic*, 2009 WL 361739, at *3-4 (permitting service by publication under

9

Rule 4(f)(3) on a defendant residing in either Germany or Croatia where neither country had explicitly objected to such means of service in their declarations pursuant to the Convention). The Commission is not aware of any other international agreement between the United States and the United Kingdom that prohibits service by publication.  Accordingly, the Commission's proposed service method is not prohibited by international agreement.[3]

### 3.   Service on Reynolds by Publication Will Provide Reasonable Notice and Comports with Due Process.

To meet the requirements of due process, the method of service approved and ordered by the district court under Rule 4(f)(3) needs only to be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Anticevic*, 2009 WL 361739, at *4 (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)); *see also Philip Morris Inc. v. Veles Ltd.*, No. 06-cv-2988, 2007 WL 725412, at *2 (S.D.N.Y. 2007) ("[T]he Constitution itself does not specify or require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond.").  With respect to

---

[3] Likewise, service by publication would not offend U.K. law.   The U.K.'s Civil Procedure Rules ("CPR") govern service within England and Wales.  In addition to personal service and service by first-class post, "[w]here it appears to the court there is good reason to authorise service by a method or at a place not otherwise permitted by [the rules], the CPR also permit a court to "make an order permitting service by an alternative method or at an alternative place." CPR 6.15.  The Commission's diligent yet unsuccessful attempts to serve Reynolds suggest that a U.K. court would permit alternative service in this case.

persons that are "missing or unknown," the Supreme Court has held that "employment of an indirect and even probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights."  *Mullane*, 339 U.S. at 317 (citations omitted).  As this Court has acknowledged, "the practicalities in a given case are a factor in determining whether constitutional requirements have been satisfied."  *KPN B.V.*, 2009 WL 690119, at *1 (quoting *Levin v. Ruby Trading Corp.*, 248 F. Supp. 537, 540-41 (S.D.N.Y. 1965)).

Here, the Commission requests permission to serve Reynolds by publishing a notice in *The Daily Telegraph*, a widely circulated daily newspaper in the United Kingdom.  "From the limited case law in the area, it is clear that service by publication to a defendant in a foreign country is an acceptable alternative means under 4(f)(3), so long as diligent attempts have been made to locate the defendant and serve process by traditional means, and the publication is one that likely would reach the defendant."  *BP Products N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 272 (E.D. Va. 2006); *see also S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987) ("Where the plaintiff can show that deliberate avoidance and obstruction by the defendant[] ha[s] made the giving of notice impossible, statutes and caselaw have allowed substitute notice by mail and by publication in media of general and wide circulation."); *S.E.C. v. Shehyn*, No. 04-cv-2003, 2008 WL 6150322, at *3 (S.D.N.Y. Nov. 26, 2008) ("Service on a defendant in a foreign country by publication of a summons and complaint in the *International Herald Tribune* once a week for four successive weeks is permissible under Rule 4(f)(3) and comports with notions of due process."); *Smith*, 2001 WL 1658211, at *3 (authorizing service by foreign publication on defendants Osama Bin Laden and al Qaeda, noting that these defendants would be on notice that a suit against them was likely to be brought in the jurisdiction in which the terrorist attack had

11

occurred).

Courts have also authorized service by publication on a defendant in a foreign country when his exact whereabouts are unknown.  For example, in *S.E.C. v. Tome*, the Second Circuit upheld service of process on unknown foreign defendants by publication of a notice in an international newspaper widely read by the financial community in Europe.  833 F.2d at 1091.  The defendants in that case were involved in the purchase of call options using misappropriated inside information in violation of federal securities laws.  *Id*. at 1087.  While the SEC reasonably concluded that the purchasers resided or conducted business in Europe, it could not identify or locate them.  *Id*. at 1091, 1093.  The court held that because the defendants' addresses in Europe were not readily ascertainable, and because the SEC chose a publication likely to be read by international investors, service by publication comported with both Rule 4(i)(1)(E), the predecessor to Rule 4(f)(3), and due process.  *Id*. at 1093.  The court further reasoned that notice by publication satisfied due process because the defendants, as members of the securities industry, should have been aware of the publicly announced SEC investigation.  *Id*.

In this case, the Commission has made diligent attempts to locate Reynolds and serve process by traditional means.  Service by registered mail or personal service are now impossible given that Reynolds's exact whereabouts are unknown, and service by email is not an available option given that Reynolds appears to have deactivated the email addresses he used in connection with Control-Finance.  While courts in previous cases have also considered whether a defendant served by alternative means possesses some knowledge of the pending lawsuit against him (*see Tome*, 833 F.2d at 1093; *BP Products N. Am., Inc.*, 236 F.R.D. at 272), this lawsuit should not come as a surprise to Reynolds.  As the perpetrator of a nearly $150 million Bitcoin

scheme that defrauded investors in the United States, Reynolds should be on notice that he might be the subject of a lawsuit here.  In addition, like the defendants in *Tome*, Reynolds should be aware of the Commission's publicly announced lawsuit given that he is a member of the virtual currency industry.

Under these circumstances, the proposed publication in *The Daily Telegraph*, a newspaper widely circulated in the area of Reynolds's last known location, is reasonably calculated to apprise him of the pendency of this action and constitutes an appropriate means of alternative service that satisfies due process requirements.  *See Machat*, 2009 WL 3029303, at *4 (authorizing service by publication in *The Daily Telegraph* one time a week for four successive weeks on a defendant believed to reside in London).

**B.      Good Cause Exists to Extend the Time Limit for Service.**

Although Rule 4(m) of the Federal Rules of Civil Procedure generally requires that service be made within ninety days after the complaint is filed, it also explicitly states that the ninety-day time limit does not apply to service on an individual or entity in a foreign country pursuant to Rules 4(f) or 4(h)(2).  Courts have interpreted that statement as an exception to the time limit that governs service on domestic defendants.  *See Lewis v. Madej*, No. 15-cv-2676, 2015 WL 6442255, at *10 (S.D.N.Y. Oct. 23, 2015) ("[T]he timing restrictions in Rule 4(m) do not apply to parties served in foreign countries pursuant to Rule 4(f)."); *see also* Fed. R. Civ. P. 4(m) advisory committee's note to 2016 amendment ("Service in a foreign country often is accomplished by means that require more than the time set by Rule 4(m).").  The Second Circuit has held that in order for the foreign country exception to apply, a plaintiff need only make a good-faith effort to serve the international defendant within the usual time limits imposed by Rule 4(m).  *See DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010).  "When the foreign country

exception does apply, the court use[s] a flexible due diligence standard to determine whether service of process was timely." *In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672, 2018 WL 4168958, at *8 (S.D.N.Y. Aug. 30, 2018) (citation omitted).

Here, the foreign defendant exception to Rule 4(m) applies because the Commission began the process of serving Defendants within the ninety days allotted for domestic service by, among other things, retaining a solicitor and process server in the United Kingdom who attempted to personally serve Defendants at the addresses they provided to the U.K. Registrar. The Commission has diligently attempted to serve Reynolds and Control-Finance but needs additional time due to the difficulties it has encountered.  Accordingly, pursuant to Federal Rule of Civil Procedure 6(b)(1)(A), the Commission requests that the Court extend the Commission's time to complete service on Reynolds and Control-Finance by sixty days.

## IV.    CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court enter an Order (1) authorizing service of process on Reynolds by publication in *The Daily Telegraph*, and (2) granting the Commission sixty days from the date of the order to effect service on Reynolds and Control-Finance.

Dated:  January 3, 2020            Respectfully submitted,

By:  s/Julia C. Colarusso
Julia C. Colarusso (admitted *pro hac vice*)
Jonah E. McCarthy (S.D.N.Y. Bar No. JM1977)
Luke B. Marsh (admitted *pro hac vice*)
Paul G. Hayeck (*pro hac vice* application to be submitted)
COMMODITY FUTURES TRADING COMMISSION
Division of Enforcement
1155 21st Street, NW
Washington, DC 20581
Telephone:  (202) 418-6044 (Colarusso direct)
jcolarusso@cftc.gov

14

jmccarthy@cftc.gov
lmarsh@cftc.gov
phayeck@cftc.gov

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 2.D of the Court's Individual Practices, the undersigned counsel certifies that this brief contains a total of 4,513 words, exclusive of the cover page, table of contents, and table of authorities, and complies with the formatting requirements set forth in the Court's Individual Practices.

s/Julia C. Colarusso
Julia C. Colarusso (admitted *pro hac vice*)

15