UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>                 Plaintiff,<br><br>        v.<br><br>CONTROL-FINANCE LIMITED AND BENJAMIN REYNOLDS,<br><br>                Defendants. | Case No. 1:19-cv-05631-JGK |

**DECLARATION OF JULIA C. COLARUSSO**
**PURSUANT TO 28 U.S.C. § 1746 (2018)**

I, Julia C. Colarusso, hereby make the following declaration based upon my personal knowledge:

**I.       INTRODUCTION**

1. I am employed as a Trial Attorney in the Division of Enforcement of the Commodity Futures Trading Commission (the "Commission") in Washington, D.C.  I have held this position since July 2019.

2. My responsibilities as a Trial Attorney include, among other things, the investigation of registered and unregistered commodity trading firms and individuals located throughout the United States and abroad, in order to ensure compliance with and enforcement of the Commodity Exchange Act and the rules and regulations promulgated thereunder.

**II.      BACKGROUND**

3. During the Commission's investigation of Defendant Control-Finance Limited ("Control-Finance"), Commission staff analyzed a variety of documents relating to the company

and Defendant Benjamin Reynolds ("Reynolds" and together with Control-Finance, "Defendants"). These documents included, but were not limited to, materials provided by customers of the Defendants and public documents obtained from the Internet, including materials from the website www.control-finance.com (the "Control-Finance Website") as well as social media websites like Facebook and LinkedIn. Commission staff also conducted numerous telephonic interviews with customers of the Defendants and corresponded with those customers via email. Based on this analysis, the Commission has concluded that from at least May 1, 2017, through October 31, 2017, Defendants received Bitcoin deposits from more than 1,000 customers worldwide, including at least 169 customers who are believed to reside within the United States.

4. The Commission filed its Complaint in this action on June 17, 2019 and issued a press release through its website the following day announcing the filing. Attached hereto as Exhibit 1 is a true and correct copy of the press release dated June 18, 2019.

5. Reynolds incorporated Control-Finance with the Registrar of Companies for England and Wales (the "U.K. Registrar") on September 8, 2016. The application Reynolds filed to incorporate Control-Finance is publicly available through the U.K. Registrar's website. True and correct copies of Control-Finance's certification of incorporation and registration application that I retrieved from the U.K. Registrar's website are attached hereto as Exhibit 2.

6. In his application to register Control-Finance, Reynolds listed Control-Finance's "Registered Office" address as 17 Marble Street, Manchester, England M2 3AW. In the section of the application relating to the company's proposed officers, Reynolds listed himself as Control-Finance's sole Director and represented his "service address" to be 12 Richmond Street,

Manchester, England M1 3NB.  In the section of the application asking for his "Country/State Usually Resident," Reynolds listed "England."  He also listed his nationality as "British."

7. According to information available on the U.K. Registrar's website, Control-Finance was struck off the Register of Companies and dissolved by the U.K. Registrar in February 2018 on the grounds that the company was no longer carrying on business.  The notices issued to Control-Finance regarding its dissolution can be viewed on the U.K. Registrar's website at the following address:  https://beta.companieshouse.gov.uk/company/10366137/filing-history.

### III.   ATTEMPTS AT SERVICE

8. Shortly after filing the Complaint in this case, on or about July 17, 2019, the Commission retained Legal Language Services ("LLS"), a litigation support firm, to arrange for service on Reynolds and Control-Finance through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Service Convention").  Pursuant to Article 5(b) of the Convention, LLS engaged a solicitor authorized by the Central Authority for England and Wales to personally serve Reynolds and Control-Finance at their respective addresses listed in the incorporation application Reynolds filed with the U.K. Registrar.

9. On July 31, 2019, a process server operating under the solicitor's supervision attempted to personally serve Reynolds at 12 Richmond Street, Manchester, England M1 3NB—the address Reynolds listed as his "service address" in Control-Finance's incorporation papers.  Upon arriving in Manchester, the process server discovered that the address did not actually exist, or at best corresponded to an office building that had long been abandoned and boarded-up.  The process server also spent considerable time canvassing the area and spoke with several

people who were entering or exiting nearby buildings. None of them had heard of Reynolds or Control-Finance, and none of them could identify the address Reynolds had used in the incorporation papers. True and correct copies of the Certificate the solicitor obtained from the Central Authority for England and Wales pursuant to Article 6 of the Hague Service Convention regarding this service attempt and the process server's supporting witness statement are attached hereto as Exhibit 3.

10. Also on July 31, 2019, the process server hand-delivered a set of service papers to the "Registered Office" address that Control-Finance listed in its application with the U.K. Registrar. Based on my communications with LLS, my understanding is that the tenant of the building located at that address informed the process server that there was no one associated with Control-Finance present there and that the use of the address by Control-Finance had not been authorized.

11. The Commission paid $2,695 to LLS in connection with these service attempts.

12. On July 17, 2019, a Commission staff member also attempted to email the Complaint, the Summonses, the Electronic Case Filing Rules for the Southern District of New York, and the Court's Individual Practices to the only known email addresses associated with Reynolds and Control-Finance: admin@control-finance.com and support@control-finance.com. The staff member received a bounce-back message indicating that the email could not be delivered because of an "unknown address error."

13. The Commission then attempted to find alternative addresses for Reynolds. Beginning in September 2019 and continuing through December 2019, myself and other Commission staff communicated with staff at a foreign financial regulatory agency in Europe to try to determine Reynolds's physical location. While that agency conducted various

searches, ultimately it was unable to uncover any new addresses associated with Reynolds.

14. The Commission also learned from investors based in South Korea that the Ulsan District Prosecutors' Office in South Korea is investigating the scheme run by Control-Finance. Along with other Commission staff, I spoke with a contact in South Korea's Supreme Prosecutors' Office about that investigation on October 11, 2019. Through additional communications with the Supreme Prosecutors' Office, the Commission understands that the investigation in South Korea is ongoing, but to date the prosecution team there has not been able to locate Reynolds.

15. On September 12, 2019, myself and another Commission staff member attempted to call the phone number previously listed on the Control-Finance Website. A ringing tone was briefly heard and then the line was disconnected.

16. In addition, on November 15, 2019, I caused copies of the Summonses, Complaint, and all other documents that had been filed in the case to that point to be mailed to Reynolds at his purported "service address" in Manchester via UPS and USPS First-Class International Registered Mail. UPS could not locate the address and returned the package to the Commission as undeliverable. To date, the Commission has not received any indication from the Postal Service that the registered mailing was delivered.

17. Based on a recent search of Control-Finance's known social media accounts conducted by Commission staff members, it also appears that Reynolds has ceased using any of those accounts.

18. Accordingly, despite the Commission's efforts, Reynolds's whereabouts are currently unknown.

19. Attached hereto as Exhibit 4 is a true and correct copy of the proposed notice the

Commission seeks leave to publish in *The Daily Telegraph* about the pendency of this action. *The Daily Telegraph* is a national British daily broadsheet newspaper published in London and distributed across the United Kingdom. It publishes legal ads and notices in print and is circulated in Manchester, England—the city of Reynolds's last-known address.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C., on January 3, 2020.

_____
Julia C. Colarusso