# EXHIBIT 2

**FILE COPY**



# CERTIFICATE OF INCORPORATION
# OF A
# PRIVATE LIMITED COMPANY

Company Number **10366137**

The Registrar of Companies for England and Wales, hereby certifies that

**CONTROL-FINANCE LIMITED**

is this day incorporated under the Companies Act 2006 as a private company, that the company is limited by shares, and the situation of its registered office is in England and Wales

Given at Companies House, Cardiff, on **8th September 2016**



* N10366137E *





THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES

The above information was communicated by electronic means and authenticated by the Registrar of Companies under section 1115 of the Companies Act 2006

![Companies House]

**IN01** (ef)

**Application to register a company**



*Received for filing in Electronic Format on the:* **07/09/2016**

X5F040PL

| | |
|---|---|
| *Company Name in full:* | **CONTROL-FINANCE LIMITED** |
| *Company Type:* | **Private company limited by shares** |
| *Situation of Registered Office:* | **England and Wales** |
| *Proposed Registered Office Address:* | **17 MARBLE STREET**<br>**MANCHESTER**<br>**GREATER MANCHESTER**<br>**ENGLAND M2 3AW** |
| *Sic Codes:* | **70229**<br>**62020** |

*I wish to partially adopt the following model articles:>*     **Private (Ltd by Shares)**

---

**Electronically filed document for Company Number:**     **10366137**

# *Proposed Officers*

---

## *Company Director       1*

| | |
|---|---|
| *Type:* | **Person** |
| *Full Forename(s):* | **BENJAMIN** |
| *Surname:* | **REYNOLDS** |
| *Service Address:* | **12 RICHMOND STREET**<br>**MANCHESTER**<br>**GREATER MANCHESTER**<br>**ENGLAND M1 3NB** |
| *Country/State Usually Resident:* | **ENGLAND** |

| | | | |
|---|---|---|---|
| *Date of Birth:* | **\*\*/03/1983** | *Nationality:* | **BRITISH** |
| *Occupation:* | **DIRECTOR** | | |

*The subscribers confirm that the person named has consented to act as a director.*

---

**Electronically filed document for Company Number:**         **10366137**

## *Statement of Capital (Share Capital)*

| | | | |
|---|---|---|---|
| *Class of Shares:* | **ORDINARY GBP 500.00 SHARES.** | *Number allotted* | 1000 |
| | | *Aggregate nominal value:* | 500000 |
| *Currency:* | **GBP** | | |

*Prescribed particulars*

**FULL RIGHTS WITH REGARDS TO VOTING, PARTICIPATION AND DIVIDENDS.**

## Statement of Capital (Totals)

| | | | |
|---|---|---|---|
| *Currency:* | **GBP** | *Total number of shares:* | 1000 |
| | | *Total aggregate nominal value:* | 500000 |
| | | *Total aggregate unpaid:* | 0 |

**Electronically filed document for Company Number:**     10366137

# *Initial Shareholdings*

| | | | |
|---|---|---|---|
| *Name:* | **BENJAMIN REYNOLDS** | | |
| *Address* | **12 RICHMOND STREET**<br>**MANCHESTER**<br>**GREATER MANCHESTER**<br>**ENGLAND**<br>**M1 3NB** | *Class of Shares:* | **ORDINARY GBP 500.00 SHARES.** |
| | | *Number of shares:* | **1000** |
| | | *Currency:* | **GBP** |
| | | *Nominal value of each share:* | **500** |
| | | *Amount unpaid:* | **0** |
| | | *Amount paid:* | **500** |

**Electronically filed document for Company Number:**         **10366137**

# *Persons with Significant Control (PSC)*

**Statement of initial significant control**

**On incorporation, there will be someone who will count as a Person with Significant Control (either a registerable person or relevant legal entity (RLE)) in relation to the company**

**Electronically filed document for Company Number:**  **10366137**

# *Individual Person with Significant Control details*

| | |
|---|---|
| Names: | **BENJAMIN REYNOLDS** |
| Country/State Usually Resident: | **ENGLAND** |
| Date of Birth: **\*\*/03/1983** | Nationality: **BRITISH** |
| Service Address: | **12 RICHMOND STREET**<br>**MANCHESTER**<br>**GREATER MANCHESTER**<br>**ENGLAND**<br>**M1 3NB** |

*The subscribers confirm that each person named as an individual PSC in this application knows that their particulars are being supplied as part of this application.*

**Electronically filed document for Company Number:        10366137**

| | |
|---|---|
| *Nature of control* | **The person holds, directly or indirectly, 75% or more of the shares in the company.** |
| *Nature of control* | **The person holds, directly or indirectly, 75% or more of the voting rights in the company.** |
| *Nature of control* | **The person has the right, directly or indirectly, to appoint or remove a majority of the board of directors of the company.** |

## Statement of Compliance

---

*I confirm the requirements of the Companies Act 2006 as to registration have been complied with.*

*Name:* **BENJAMIN REYNOLDS**
*Authenticated* **YES**

---

## Authorisation

*Authoriser Designation:* **subscriber**     *Authenticated* **YES**

---

**Electronically filed document for Company Number:**     **10366137**

SCHEDULE 1

# COMPANY HAVING A SHARE CAPITAL

Memorandum of association of:
**CONTROL-FINANCE LIMITED**

Each Subscriber to this Memorandum of Association wishes to form a company under the Companies Act 2006 and agrees to become a member of the company and to take at least one share.

*Name of each subscriber:*

BENJAMIN REYNOLDS


DATED: 07/09/2016

**THE COMPANIES ACT 2006**
**PRIVATE COMPANY LIMITED BY SHARES**
**ARTICLES OF ASSOCIATION**
**CONTROL-FINANCE LIMITED**

**INDEX TO THE ARTICLES**

PART 1: INTERPRETATION AND LIMITATION OF LIABILITY

1. Defined terms
2. Liability of members

PART 2: DIRECTORS

DIRECTORS' POWERS AND RESPONSIBILITIES

3. Directors' general authority
4. Shareholders' reserve power
5. Directors may delegate
6. Committees

DECISION-MAKING BY DIRECTORS

7. Directors to take decisions collectively
8. Unanimous decisions
9. Calling a directors' meeting
10. Participation in directors' meetings
11. Quorum for directors' meetings
12. Chairing of directors' meetings
13. Casting vote
14. Conflicts of interest
15. Records of decisions to be kept
16. Directors' discretion to make further rules

APPOINTMENT OF DIRECTORS

17. Methods of appointing directors
18. Termination of director's appointment
19. Directors' remuneration
20. Directors' expenses

PART 3: SHARES AND DISTRIBUTIONS

SHARES

21. Issue and transfer of shares
22. Powers to issue different classes of share
23. Company not to be bound by less than absolute interests
24. Share certificates
25. Replacement share certificates
26. Share transfers
27. Transmission of shares
28. Exercise of transmittees' rights
29. Transmittees bound by prior notices

DIVIDENDS AND OTHER DISTRIBUTIONS

30. Procedure for declaring dividends
31. Payment of dividends and other distributions
32. No interest on distributions
33. Unclaimed distributions
34. Non-cash distributions
35. Waiver of distributions

CAPITALISATION OF PROFITS

36. Authority to capitalise, and appropriation of capitalised sums

PART 4: DECISION-MAKING BY SHAREHOLDERS

ORGANISATION OF GENERAL MEETINGS

37. Attendance and speaking at general meetings
38. Quorum for general meetings
39. Chairing general meetings
40. Attendance and speaking by directors and non-shareholders
41. Adjournment

VOTING AT GENERAL MEETINGS

42. Voting: general
43. Errors and disputes
44. Poll votes
45. Content of proxy notices
46. Delivery of proxy notices
47. Amendments to resolutions

PART 5

ADMINISTRATIVE ARRANGEMENTS

48. Means of communication to be used
49. Company seals
50. No right to inspect accounts and other records
51. Provision for employees on cessation of business

DIRECTORS' INDEMNITY AND INSURANCE

52. Indemnity
53. Insurance
54. Lien
55. Place of Jurisdiction and Choice of Law

PART 1: INTERPRETATION AND LIMITATION OF LIABILITY

# PART 1: INTERPRETATION AND LIMITATION OF LIABILITY

**Defined terms**

1. In the articles, unless the context requires otherwise:
    "articles" means the company's articles of association;
    "associated company" has the meaning given in article 53
    "bankruptcy" includes individual insolvency proceedings in a jurisdiction other than England and Wales or Northern Ireland which have an effect similar to that of bankruptcy;
    "chairman" has the meaning given in article 12;
    "chairman of the meeting" has the meaning given in article 39;
    "Companies Acts" means the Companies Acts (as defined in section 2 of the Companies Act 2006), insofar as they apply to the company;
    "director" means a director of the company, and includes any person occupying the position of director, by whatever name called;
    "distribution recipient" has the meaning given in article 31;
    "document" includes, unless otherwise specified, any document sent or supplied in electronic form;
    "electronic form" has the meaning given in section 1168 of the Companies Act 2006;
    "fully paid", in relation to a share, means that the nominal value and any premium to be paid to the company in respect of that share have been paid to the company;
    "hard copy form" has the meaning given in section 1168 of the Companies Act 2006;
    "holder", in relation to shares, means the person whose name is entered in the register of members as the holder of the shares;
    "instrument" means a document in hard copy form;
    "ordinary resolution" has the meaning given in section 282 of the Companies Act 2006;
    "paid" means paid or credited as paid;
    "participate", in relation to a directors' meeting, has the meaning given in article 10;
    "proxy notice" has the meaning given in article 45;
    "shareholder" means a person who is the holder of a share;
    "shares" means shares in the company;
    "special resolution" has the meaning given in section 283 of the Companies Act 2006;
    "subsidiary" has the meaning given in section 1159 of the Companies Act 2006;
    "transmittee" means a person entitled to a share by reason of the death or bankruptcy of a shareholder or otherwise by operation of law; and
    "writing" means the representation or reproduction of words, symbols or other information in a visible form by any method or combination of methods, whether sent or supplied in electronic form or otherwise.

Unless the context otherwise requires, other words or expressions contained in these articles bear the same meaning as in the Companies Act 2006 as are in force on the date when these articles become binding on the company.

**Liability of members**

2. The liability of the members is limited to the amount, if any, unpaid on the shares held by them.

# PART 2: DIRECTORS
## DIRECTORS' POWERS AND RESPONSIBILITIES

**Directors' general authority**

3. (1) Subject to the articles, the directors are responsible for the management of the company's business, for which purpose they may exercise all the powers of the company, and the company shall conduct business as a general commercial company, and have all of the powers of a natural person, in accordance with the provisions of the Companies Act 2006.
(2) If the company has only one director, that director shall be the sole legal representative of the company, in accordance with these articles.
(3) If the company has more than one director, two directors shall be the legal representatives of the company, in accordance with these articles.
(4) The directors of the company shall not permit the company to engage in the business of banking or in the trading of financial security instruments other than for its own account, neither shall the representatives, nor the directors of a branch of the company which is not based or situate in the UK, be allowed to undertake any action or activity in either banking or the dealing in securities.
(5) The directors may establish one or more branch offices of the company outside the geographical territory of Great Britain and Northern Ireland.

**Shareholders' reserve power**

4. (1) The shareholders may, by special resolution, direct the directors to take, or refrain from taking, specified action.
(2) No such special resolution invalidates anything which the directors have done before the passing of the resolution.

**Directors may delegate**

5. (1) Subject to the articles, the directors may delegate any of the powers conferred on them by and under the articles:
    (a) to such person or committee;
    (b) by such means (including by power of attorney);
    (c) to such an extent;
    (d) in relation to such matters or territories; and
    (e) on such terms and conditions
as they shall think fit.
(2) If the directors so specify, any such delegation may authorise further delegation of the directors' powers by any person to whom they are so delegated.
(3) The directors may revoke any delegation in whole or part, or alter its terms and conditions, at any time, such revocation to be valid from its notification by the delegator to the delegate.
(4) The directors may appoint a company secretary of the company for such period of time and according to terms and conditions that they deem fit and the tenure of the company secretary shall continue until such time as their appointment is terminated.
(5) A director may appoint, according to specific terms in writing by giving written notice to the company, any other consenting person as an alternate director to exercise all rights, functions and responsibilities of the appointing director for a fixed period of time, and such alternate director shall be subject to any restrictions otherwise applicable to the appointing director, in the absence of the appointing director, as provided for in these articles in relation to the company. However, the alternate director shall be liable for his or her own acts and omissions and shall not be deemed to be the agent of, nor acting for, the appointing director for those acts or omissions, and the appointment of the alternate director shall terminate when revoked by the appointor, or in accordance with the terms contained in the written notice of appointment, or when their tenure as director of the appointor terminates or is terminated for whatever reason.

**Committees**

6. (1) Committees to which the directors delegate any of their powers must follow procedures which are based as far as applicable on those provisions of the articles which govern the taking of decisions by directors.
(2) The directors may make procedural rules for all or any committees, which shall prevail over rules derived from the articles if they are not consistent with them.

## DECISION-MAKING BY DIRECTORS

**Directors to take decisions collectively**

7. (1) The general rule about decision-making by directors is that any decision of the directors must be either a majority decision at a meeting or a decision taken in accordance with article 8.
(2) If:
    (a) the company only has one director; and
    (b) no provision of the articles requires it to have more than one director
the general rule does not apply, and the director may take decisions without regard to any of the provisions of the articles relating to directors' decision-making.

**Unanimous decisions**

8. (1) A decision of the directors is taken in accordance with this article when all eligible directors indicate to each other by any means that they share a common view on a matter.
(2) Such a decision may take the form of a resolution in writing, copies of which have been signed by each eligible director, or to which each eligible director has otherwise indicated agreement in writing.
(3) References in this article to eligible directors are to directors who would have been entitled to vote on the matter had it been proposed as a resolution at a directors' meeting.
(4) A decision may not be taken in accordance with this article if the eligible directors would not have formed a quorum at such a meeting.

**Calling a directors' meeting**

9. (1) Any director may call a directors' meeting by giving notice of the meeting to the directors or by authorising the company secretary (if any) to give such notice.
(2) Notice of a directors' meeting must be given to each director, but need not be in writing.
(3) Notice of a directors' meeting need not be given to directors who waive their entitlement to notice of that meeting, by giving notice to that effect to the company not more than seven (7) days after the date on which the meeting is held. Where such notice is given after the meeting has been held, that does not affect the validity of the meeting, or of any business conducted at it.

**Participation in directors' meetings**

10. (1) Subject to the articles, directors participate in a directors' meeting, or part of a directors' meeting, when:
    (a) the meeting has been called and takes place in accordance with the articles; and
    (b) they can each communicate to the others any information or opinions they have on any particular item of business of the meeting.
(2) In determining whether directors are participating in a directors' meeting, it is irrelevant where any director is or how they communicate with each other.
(3) If all the directors participating in a meeting are not in the same place, they may decide that the meeting is to be treated as taking place wherever any of them is situate.

**Quorum for directors' meetings**

11. (1) At a directors' meeting, unless a quorum is participating, no proposal is to be voted on, except a proposal to call another meeting.
(2) The quorum for directors' meetings may be fixed from time to time by a decision of the directors, but it must never be less than two in number – subject to article 3 (2) above, and unless there is a sole director – and unless otherwise fixed it

is to be at least two.
(3) If the total number of directors for the time being is less than the quorum required, the directors must not take any decision other than a decision:
    (a) to appoint further directors; or
    (b) to call a general meeting so as to enable the shareholders to appoint
further directors.

**Chairing of directors' meetings**

12. (1) The directors may appoint a director to chair their meetings.
(2) The person so appointed for the time being is known as the chairman.
(3) The directors may terminate the chairman's appointment at any time.
(4) If the chairman is not participating in a directors' meeting within ten minutes of the time at which it was due to start, the participating directors, wheresoever present, must appoint one of their number to chair it.

**Casting vote**

13. (1) If the numbers of votes for and against a proposal are equal, the chairman or other director chairing the meeting has a casting vote.
(2) This casting vote shall not apply if, in accordance with the articles, the chairman or other director is not to be counted as participating in the decision-making process for quorum or voting purposes.

**Conflicts of interest**

14. A director shall declare any direct or indirect conflicts of interest – or both – in relation to any transaction with the company, including all relevant details relating thereto, in advance of negotiations being entered into upon the relevant transaction, in writing to the other directors, if any, otherwise to all shareholders, and shall obtain written approval in advance from all other directors, if any, or shareholders as may be applicable in relation to each particular case, that the director may vote in relation to the matter at issue.

**Records of decisions to be, kept**

15. The directors must ensure that the company keeps a record, in writing, for at least ten (10) years from the date of the decision recorded, of every unanimous or majority decision taken by the directors, be that decision in favour of, or against, the motion decided upon.

**Directors' discretion to make further rules**

16. Subject to the articles, the directors may make any rule which they think fit as to how they take decisions, and on how such rules are to be recorded or communicated to directors.

APPOINTMENT OF DIRECTORS

**Methods of appointing directors**

17. (1) Any person who is willing to act as a director, and is permitted by law so to do, may be appointed as a director:
    (a) by ordinary resolution; or
    (b) by a decision of the directors.
(2) In any case where, as a result of death, the company has no shareholders and no directors, the personal representatives of the last surviving shareholder to have the right, by notice in writing to the company at its registered office, receipt of such notice to be obtained, to appoint a person to be a director.
(3) For the purposes of sub-paragraph (2) above, where two or more shareholders die in circumstances rendering it uncertain who was the last to die, a younger shareholder is deemed to have survived an older shareholder or shareholders.

**Termination of director's appointment**

18. A person ceases to be a director upon:
    (a) that person ceasing to be a director by virtue of any provision of the Companies Act 2006 or is prohibited from being a director by law;
    (b) a bankruptcy order being made against that person;
    (c) a composition being made with that person's creditors generally in satisfaction of that person's debts;
    (d) a registered medical practitioner who is treating that person giving a written opinion to the company stating that that person has become physically or mentally incapable of acting as a director and may remain so for more than three months;
    (e) that person's mental health causing a court to make an order which wholly or partly prevents that person from personally exercising any powers or rights which that person would otherwise have; or
    (f) notification being received by the company from the director that the director is resigning from office, and such resignation has taken effect in accordance with its terms.

**Directors' remuneration**

19. (1) Directors may undertake any services for the company that the directors decide.
(2) Directors are entitled to such remuneration as the directors determine:
    (a) for their services to the company as directors; and
    (b) for any other service which they undertake for the company.
(3) Subject to the articles, a director's remuneration may:
    (a) take any form; and
    (b) include any arrangements in connection with the payment of a pension, allowance or gratuity, or any death, sickness or disability benefits, to, for, or in respect of, that director.
(4) Unless the directors decide otherwise, directors' remuneration accrues from day to day.

**Directors' expenses**

20. The company may pay any reasonable expenses which the directors properly incur in connection with their attendance at:
    (a) meetings of directors or committees of directors;
    (b) general meetings; or
(c) separate meetings of the holders of any class of share or debenture of the company, or otherwise in connection with the exercise of their powers and the discharge of their responsibilities in relation to the company.

**PART 3: SHARES AND DISTRIBUTIONS**
**SHARES**

**Issue and transfer of Shares**

21. (1) Shares may be issued as either partly or fully paid.
(2) Full or partial payment of shares by a shareholder shall be evidenced by a written receipt of the transfer of the relevant amount or amounts to the bank account of the company, unless otherwise determined by a resolution of the Board of Directors of the company.
(3) In the event that a shareholder proposes, or is legally required, to sell, transfer, or otherwise dispose of, all or part of his, her, or its, shares in the company by whatever means, that transferring shareholder shall advise all other shareholders of this proposal or requirement on each occasion in writing, with confirmation of receipt of such notification to be obtained in writing.
(4) Other shareholders in the company receiving such written notification referred to in article 21 (3) above, shall have a period of thirty (30) days in which to notify the transferring shareholder in writing, with confirmation of receipt of such notification to be obtained in writing, of any intention to acquire the relevant shares in whole or in part.
(5) If all of the other shareholders indicate a valid intention to acquire the shares subject to the transfer, then they shall be entitled to acquire the said shares in proportion to their then existing shareholding in the company.
(6) If some of the other shareholders decline the opportunity to acquire the said shares, or do not respond within the prescribed thirty (30) day period, the said shares shall be offered to the remaining shareholders, who may acquire the said surplus shares in proportion to their then existing shareholding in the company.
(7) The consideration payable for the said shares by the other shareholder or shareholders to the transferring shareholder shall be the nominal value of the shares, or the fair market value of the shares determined having regard to all relevant economic factors and in accordance with objective criteria, at the discretion of the transferring shareholder.
(8) If there is a dispute between the transferor and the transferee(s) as to the monetary amount of the fair market value of the said shares being the subject of the transfer, the fair market value shall be determined by an independent financial expert, acceptable to both the transferor and transferee, within a reasonable period of time that shall not exceed thirty (30) days from the date on which the matter was officially referred to the expert for determination in writing.
(9) If the transferor and transferee cannot agree upon an independent financial expert for the purposes of article 21 (8) above, an independent financial expert shall be appointed by the local Chamber of Commerce in the area where the company's principal operations are conducted, and the determination of the said independent financial expert, made having regard to all relevant economic considerations, shall be final and binding upon the transferor and transferee.
(10) The transferor shall sell, transfer or dispose of the said shares at the same price, per share, to all other shareholders who have validly indicated an intention to acquire the said shares in accordance with these articles, provided that the same sale, transfer or disposal of the said shares is concerned. A subsequent disposal would require a new share valuation.
(11) If no shareholders validly notify the transferring shareholder of an intention to acquire the said shares within the thirty (30) day notice period, the transferring shareholder shall be then entitled to sell, transfer or otherwise dispose of the said shares without restriction and as he, she, or it deems fit.

**Powers to issue different classes of share**

22. (1) Subject to the articles, but without prejudice to the rights attached to any existing share, the company may issue shares with such rights or restrictions as may be determined by ordinary resolution.
(2) The company may issue shares which are to be redeemed, or are liable to be redeemed at the option of the company or the holder, and the directors may determine the terms, conditions and manner of redemption of any such shares.

**Company not to be bound by less than absolute interests**

23. Except as required by law, no person is to be recognised by the company as holding any share upon any trust, and except as otherwise required by law or the articles, the company is not in any way to be bound by or recognise any interest in a share other than the holder's absolute ownership of it and all the rights attaching to it.

**Share certificates**

24. (1) The company may issue to each shareholder, free of charge, one or more certificates in respect of the shares which that shareholder holds.
(2) Each and every share certificate must specify:
    (a) in respect of how many shares, and of what class, it is issued;

(b) the nominal value of those shares;
(c) that the shares are fully-paid; and
(d) any distinguishing numbers attributed to them.
(3) No single certificate may be issued respect shares of more than one class.
(4) If more than one person holds a share, only one certificate may be issued in respect of it.
(5) All certificates must:
(a) have affixed to them the company's seal; or
Be otherwise executed in accordance with the Companies Acts.

**Replacement share certificates**

25. If a certificate issued in respect of a shareholder's shares is:
(a) damaged or defaced; or
(b) said to be lost, stolen or destroyed
that shareholder is entitled to be issued with a replacement certificate in respect of the same shares free of charge.

**Share transfers**

26. (1) Shares may be transferred by means of an instrument of transfer in any usual form, or any other form approved by the directors, which is executed by or on behalf of the transferor.
(2) No fee may be charged for registering any instrument of transfer or other document relating to or affecting the title to any share.
(3) The company may retain any instrument of transfer which is registered.
(4) The transferor remains the holder of a share until the transferee's name is entered in the register of members as holder of it.
(5) The directors may refuse to register the transfer of a share transferred other than in accordance with these articles and if they do so, the instrument of transfer must be returned to the transferee with a written notice stating the reasons for its refusal.

**Transmission of shares**

27. (1) If title to a share passes to a transmittee, the company may only recognise the transmittee as having any entitlement to that share.
(2) A transmittee who produces such evidence of entitlement to shares as the directors may properly require:
(a) may, subject to the articles, choose either to become the holder of those shares or to have them transferred to another person; and
(b) subject to the articles, and pending any transfer of the shares to another person, has the same rights as the original holder had.
(3) However, transmittees shall not have the right to attend or vote at a general meeting, or agree to a proposed written resolution, in respect of shares to which they are entitled, by reason of the holder's death or bankruptcy or otherwise, unless they become the holders of those shares.

**Exercise of transmittees' rights**

28. (1) Transmittees who wish to become the holders of shares to which they have become entitled must notify the company in writing of that wish.
(2) If a transmittee wishes to have a share transferred to another person, the transmittee must execute an instrument of transfer in respect of it and the transaction must be in accordance with other provisions concerning the transfer of shares contained in these articles.

**Transmittees bound by prior notices**

29. If a notice is given to a shareholder in respect of shares and a transmittee is entitled to those shares, the transmittee is bound by the notice if it was given to the shareholder before the transmittee's name has been entered in the register of members.

DIVIDENDS AND OTHER DISTRIBUTIONS

**Procedure for declaring dividends**

30. (1) The company may by ordinary resolution declare dividends, and the directors may decide to pay interim dividends.
(2) A dividend must not be declared unless the directors have made a recommendation as to its amount. Such a dividend must not exceed the amount recommended by the directors.
(3) No dividend may be declared or paid unless it is in accordance with shareholders' respective rights.
(4) Unless the shareholders' resolution to declare, or directors' decision to pay, a dividend, or the terms on which shares are issued, specify otherwise, it must be paid by reference to each shareholder's holding of shares on the date of the resolution or decision to declare or pay it.
(5) If the company's share capital is divided into different classes, no interim dividend may be paid on shares carrying deferred or non-preferred rights if, at the time of payment, any preferential dividend(s) is or are in arrears.
(6) The directors may pay at intervals any dividend payable at a fixed rate if it appears to them that the profits available for distribution justify the payment.
(7) If the directors act in good faith, they shall not incur any liability to the holders of shares conferring preferred rights for any loss they may suffer by the lawful payment of an interim dividend on shares with deferred or non-preferred rights.

**Payment of dividends and other distributions**

31. (1) Where a dividend or other sum being a distribution is payable in
respect of a share, it must be paid by one or more of the following means:
(a) by transfer to a bank or building society account specified by the distribution recipient either in writing or as the directors may otherwise decide;
(b) by sending a cheque made payable to the distribution recipient by post to the distribution recipient at his, her, or its last registered address (if the distribution recipient is a holder of the share) or, in any other case, to an address specified by the distribution recipient either in writing or as the directors may otherwise decide;
(c) by sending a cheque made payable to such person by post to such person at the address the distribution recipient has specified either in writing or as the directors may otherwise decide; or
(d) by any other means of payment as the directors agree with the distribution recipient either in writing or by such other means as the directors decide.
(2) In the articles, "the distribution recipient" means, in respect of a share in respect of which a dividend or other sum is payable:
(a) the holder of the share; or
(b) if the share has two or more joint holders, whichever of them is named first in the register of members; or
(c) if the holder is no longer entitled to the share by reason of death or bankruptcy; or
otherwise, by operation of law, the transmittee.

**No interest on distributions**

32. The company shall not pay interest on any dividend or other sum payable in respect of a share unless otherwise provided by:
(a) the terms on which the share was issued; or
(b) the provisions of another agreement between the holder or holders of that share and the company.

**Unclaimed distributions**

33. (1) All dividends or other sums which are:
(a) payable in respect of shares; and
(b) unclaimed after having been declared or become payable
may be invested or otherwise made use of by the directors for the benefit of the company until claimed.
(2) The payment of any such dividend or other sum into a separate account does not make the company a trustee in respect of it.
(3) If:
(a) twelve (12) years or more have passed from the date upon which a dividend or other sum became due for payment; and
(b) the distribution recipient has not claimed it
the distribution recipient is no longer entitled to that dividend or other sum and it ceases to remain owing by the company.

**Non-cash distributions**

34. (1) Subject to the terms of issue of the share in question, the company may, by ordinary resolution on the recommendation of the directors, decide to pay all or part of a dividend or other distribution payable in respect of a share by transferring non-cash assets of equivalent value (including, without limitation, shares or other securities in any company).
(2) For the purposes of paying a non-cash distribution, the directors may make whatever arrangements they think fit, including, where any difficulty arises regarding the distribution:
(a) fixing the value of any assets;
(b) paying cash to any distribution recipient on the basis of that value in order to adjust the rights of recipients; and
(c) vesting any assets in trustees.

**Waiver of distributions**

35. Distribution recipients may waive their entitlement to a dividend or other distribution payable in respect of a share by giving the company notice in writing to that effect, but if:
(a) the share has more than one holder; or
(b) more than one person is entitled to the share, whether by reason of the death or bankruptcy of one or more joint holders, or otherwise
the notice is not effective unless it is expressed to be given, and signed, by all the holders or persons otherwise entitled to the share.

CAPITALISATION OF PROFITS

**Authority to capitalise, and appropriation of capitalised sums**

36. (1) Subject to the articles, the directors may, if they are so authorised by
an ordinary resolution:
(a) decide to capitalise any profits of the company (whether or not they are available for distribution) which are not required for paying a preferential dividend, or any sum standing to the credit of the company's share premium account or capital redemption reserve; and

(b) appropriate any sum which they so decide to capitalise (a "capitalised sum") to the persons who would have been entitled thereto if it were distributed by way of dividend (the "persons entitled") and in the same proportions.
(2) Capitalised sums must be applied:
    (a) on behalf of the persons entitled; and
    (b) in the same proportions as a dividend would have been distributed to them.
(3) Any capitalised sum may be applied in paying-up new shares of a nominal amount equal to the capitalised sum which are then allotted credited as fully paid to the persons entitled or as they may direct.
(4) A capitalised sum which was appropriated from profits available for distribution may be applied in paying-up new debentures of the company which are then allotted credited as fully paid to the persons entitled or as they may direct.
(5) Subject to the articles the directors may :
    (a) apply capitalised sums by paying-up a mix of new shares and debentures as set out paragraphs (3) and (4) above ;
    (b) make such arrangements as they think fit to deal with shares or debentures becoming distributable in fractions under this article (including the issuing of fractional certificates, or the making of cash payments); and
    (c) authorise any person to enter into an agreement with the company on behalf of all the persons entitled which is binding upon them in respect of the allotment to them of shares or debentures under this article.

## PART 4: DECISION-MAKING BY SHAREHOLDERS
## ORGANISATION OF GENERAL MEETINGS

**Attendance and speaking at general meetings**

37. (1) A person is able to exercise the right to speak at a general meeting when that person is in a position to communicate during the meeting to all those attending, any information or opinions which that person has on the business of the meeting.
(2) A person is able to exercise the right to vote at a general meeting when:
    (a) that person is able to vote, during the meeting, on resolutions put to the vote at the meeting; and
    (b) that person's vote can be taken into account in determining whether or not such resolutions are passed at the same time as the votes of all the other persons attending the meeting.
(3) The directors may make whatever arrangements they consider appropriate to enable those attending a general meeting to exercise their rights to speak or vote at it.
(4) In determining attendance at a general meeting, it is immaterial whether any two or more members attending it are in the same place as each other.
(5) Two or more persons who are not in the same place as each other attend a general meeting if their circumstances are such that, if they have (or were to have) rights to speak and vote at that meeting, they are (or would be) able to exercise them.

**Quorum for general meetings**

38. (1) No business other than the appointment of the chairman of the meeting is to be transacted at a general meeting if the persons attending it do not constitute a quorum.
(2) The quorum for shareholder meetings shall not be less than two, unless there is a sole shareholder and unless otherwise fixed it shall be two.

**Chairing general meetings**

39. (1) If the directors have appointed a chairman, the chairman shall chair general meetings if present and willing so to do.
(2) If the directors have not appointed a chairman, or if the chairman is unwilling to chair the meeting, or is not present within ten minutes of the time at which a meeting was due to start:
    (a) the directors present; or
    (b) (if no directors are present) the meeting
must appoint a director or shareholder to chair the meeting, and the appointment of the chairman of the meeting must be the first business of the meeting.
(3) The person chairing a meeting in accordance with this article is referred to as "the chairman of the meeting".

**Attendance and speaking by directors and non-shareholders**

40. (1) Directors may attend and speak at general meetings, whether or not they are shareholders.
(2) The chairman of the meeting may permit other persons who are not :
    (a) shareholders of the company ; or
    (b) otherwise entitled to exercise the rights of shareholders in relation to general meetings,
to attend and speak at a general meeting.

**Adjournment**

41. (1) If the persons attending a general meeting within half an hour of the time at which the meeting was due to start do not constitute a quorum, or if during a meeting a quorum ceases to be present, the chairman of the meeting must adjourn it.
(2) The chairman of the meeting may adjourn a general meeting at which a quorum is present if:
    (a) the meeting consents to an adjournment; or
    (b) it appears to the chairman of the meeting that an adjournment is necessary to protect the safety of any person attending the meeting or ensure that the business of the meeting is conducted in an orderly manner.
(3) The chairman of the meeting must adjourn a general meeting if directed to do so by the meeting.
(4) When adjourning a general meeting, the chairman of the meeting must:
    (a) either specify the time and place to which it is adjourned or state that it is to continue at a time and place to be fixed by the directors: and
    (b) have regard to any directions as to the time and place of any adjournment which have been given by the meeting.
(5) If the continuation of an adjourned meeting is to take place more than fourteen (14) days after it was adjourned, the company must give at least seven (7) clear days' notice of it (that is, excluding the day of the adjourned meeting and the day on which the notice is given):
    (a) to the same persons to whom notice of the company's general meetings is required to be given; and
    (b) that notice shall contain the same information which such notice is required to contain.
(6) No business may be transacted at an adjourned general meeting which could not properly have been transacted at the meeting if the adjournment had not taken place.

## VOTING AT GENERAL MEETINGS

**Voting: general**

42. A resolution put to the vote of a general meeting must be decided on a show of hands unless a poll is duly demanded in accordance with the articles.

**Errors and disputes**

43. (1) No objection may be raised to the qualification of any person voting at general meeting except at the meeting or adjourned meeting at which the vote objected to is tendered, and every vote not disallowed at the meeting is valid.
(2) Any such objection must be referred to the chairman of the meeting, whose decision is final.

**Poll votes**

44. (1) A poll on a resolution may be demanded:
    (a) in advance of the general meeting where it is to be put to the vote; or
    (b) at a general meeting, either before a show of hands on that resolution, or immediately after the result of a show of hands on that resolution is declared.
(2) A poll may be demanded by:
    (a) the chairman of the meeting;
    (b) the directors ;
    (c) two or more persons having the right to vote on the resolution; or
    (d) a person or persons representing not less than one-tenth of the total voting rights of all those shareholders having the right to vote on the resolution.
(3) A demand for a poll may be withdrawn if:
    (a) the poll has not yet been taken; and
    (b) the chairman of the meeting consents to the withdrawal.
(4) Polls must be taken immediately and in such manner as the chairman of the meeting directs.

**Content of proxy notices**

45. (1) Proxies may only validly be appointed by a notice in writing (a "proxy notice") which:
    (a) states the name and address of the shareholder appointing the proxy;
    (b) identifies the person appointed to be that shareholder's proxy and the general meeting in relation to which that person is appointed;
    (c) is signed by or on behalf of the shareholder appointing the proxy, or is authenticated in such manner as the directors may determine; and
    (d) is delivered to the company in accordance with the articles and any instructions contained in the notice of the general meeting to which they relate.
(2) The company may require proxy notices to be delivered in a particular form, and may specify different forms for different purposes.
(3) Proxy notices may specify how the proxy appointed under them is to vote (or that the proxy is to abstain from voting) on one or more resolutions.
(4) Unless a proxy notice indicates otherwise, it must be treated as:
    (a) allowing the person appointed under it a proxy discretion as to how to vote on any ancillary or procedural resolutions put to the meeting; and
    (b) appointing that person as a proxy in relation to any adjournment of the general meeting to which it relates as well as the meeting itself.

**Delivery of proxy notices**

46. (1) A person who is entitled to attend, speak or vote (either on a show of hands or on a poll) at a general meeting remains so entitled in respect of that meeting or any adjournment of it, notwithstanding that a valid proxy notice has been delivered to the company by or on behalf of that person.
(2) An appointment under a proxy notice may be revoked by delivering to the company a notice in writing given by or on behalf of the person by whom or on whose behalf the proxy notice was given.
(3) A notice revoking a proxy appointment only takes effect if it is delivered before the start of the meeting or adjourned meeting to which it relates.
(4) If a proxy notice is not executed by the person appointing the proxy, it must be accompanied by written evidence of the authority of the person who executed it to execute it on behalf of the appointor.

**Amendments to resolutions**

47. (1) An ordinary resolution to be proposed at a general meeting may be amended by ordinary resolution if:
    (a) notice of the proposed amendment is given to the company in writing by a person entitled to vote at the general meeting at which it is to be proposed not less than 48 hours before the meeting is to take place (or such later time as the chairman of the meeting may determine); and
    (b) the proposed amendment does not, in the reasonable opinion of the chairman of the meeting, materially alter the scope of the resolution.
(2) A special resolution to be proposed at a general meeting may be amended by ordinary resolution, if:
    (a) the chairman of the meeting proposes the amendment at the general meeting at which the resolution is to be proposed; and
    (b) the amendment does not go beyond what is necessary to correct a grammatical or similar error in the resolution.
(3) If the chairman of the meeting, acting in good faith, wrongly decides that an amendment to a resolution is not in order, the chairman's error does not invalidate the vote on that resolution.

## PART 5: ADMINISTRATIVE ARRANGEMENTS

**Means of communication to be used**

48. (1) Subject to the articles, anything sent or supplied by or to the company under the articles may be sent or supplied in any way in which the Companies Act 2006 provides for documents or information which are authorised or required by any provision of that Act to be sent or supplied by or to the company.
(2) Subject to the articles, any notice or document to be sent or supplied to a director in connection with the taking of decisions by directors may also be sent or supplied by the means by which that director has requested that they be sent or supplied with such notices or documents.
(3) A director may agree with the company that notices or documents sent to that director in a particular way are to be deemed as having been received within a specified time of their having been sent, and for the specified time to be less than two (2) complete working days.

**Company seals**

49. (1) Any common seal may only be used by the authority of the directors.
(2) The directors may decide by what means and in what form any common seal is to be used.
(3) Unless otherwise decided by the directors, if the company has a common seal and it is affixed to a document, that document must also be signed by at least one authorised person in the presence of a witness who attests the signature of that person.
(4) For the purposes of this article, an authorised person is:
    (a) any director of the company;
    (b) the company secretary (if any);
    (c) any person authorised by the directors for the purpose of signing documents to which the common is applied.

**No right to inspect accounts and other records**

50. Except as provided by law, or authorised by the directors or an ordinary resolution of the company, no person is entitled to inspect any of the company's accounting or other records or documents merely by virtue of being a shareholder.

**Provision for employees on cessation of business**

51. The directors may decide to make provision for the benefit of persons employed or formerly employed by the company or any of its subsidiaries (other than a director or former director or shadow director) in connection with the cessation or transfer to any person of the whole or part of the undertaking of the company or that subsidiary.

### DIRECTORS' INDEMNITY AND INSURANCE

**Indemnity**

52. (1) Subject to sub-paragraph (2) below, a relevant director of the company or an associated company may be indemnified out of the company's assets against:
    (a) any liability incurred by that director in connection with any negligence, default, breach of duty or breach of trust in relation to the company or an associated company;
    (b) any liability incurred by that director in connection with the activities of the company or an associated company in its capacity as a trustee of an occupational pension scheme (as defined in section 235(6) of the Companies Act 2006); or
    (c) any other liability incurred by that director as an officer of the company or an associated company.
(2) This article does not authorise any indemnity which would be prohibited or rendered void by any provision of the Companies Acts or by any other provision of law.
(3) In this article:
    (a) companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate; and
    (b) a "relevant director" means any director or former director of the company or an associated company.

**Insurance**

53. (1) The directors may decide to purchase and maintain insurance, at the expense of the company, for the benefit of any relevant director in respect of any relevant loss.
(2) In this article:
    (a) a "relevant director" means any director or former director of the company or an associated company;
    (b) a "relevant loss" means any loss or liability which has been or may be incurred by a relevant director in connection with that director's duties or powers in relation to the company, any associated company or any pension fund or employees' share scheme of the company or associated company; and
    (c) companies are associated if one is a subsidiary of the other or both are subsidiaries of the same body corporate.

**Lien**

54. (1) With respect to any shareholder indebted to the company in any way, the company shall retain a first and paramount lien with respect to all shares registered in the name of the indebted shareholder, irrespective of whether the relevant shares are fully paid or otherwise.
(2) Unless determined otherwise by the directors, the company's lien over shares falling within the ambit of sub-paragraph 54 (1) above shall have priority over any third party claim or claims or interest with respect to the relevant shares and includes any dividends payable by the company in relation to the said shares and the
proceeds of sale in the event that the company's lien is ultimately enforced.
(3) In the event that the company has decided to enforce the lien with respect to the shares falling within the ambit of sub-paragraph 54 (1) above, the director or directors shall send a written notice of enforcement of the lien to the registered holder or holders or the legally entitled beneficiaries of the relevant shares, and such notice shall specify the monetary amount outstanding, include a final demand for full payment within fourteen (14) days and state the company's intention to sell the shares in the event of non-payment.
(4) In the event that the company has sold the shares falling within the ambit of sub-paragraph 54 (1) above, the directors may such take action necessary to
implement and give effect to the transfer of the said shares in accordance with the provisions of these articles.
(5) In the event that the proceeds of the sale of the said shares falling within the ambit of sub-paragraph 54 (1) exceed the debt owed to the company, the surplus
monetary amount, less all reasonable costs of enforcement incurred by the company, shall be returned to the registered holder or holders or the legally entitled beneficiaries of the relevant shares, provided that the relevant share certificate or certificates have been returned to the company for cancellation.
(6) A statutory declaration by a director or company secretary confirming the office held by the signatory in relation to the company and that the said shares subject to the lien have been sold to a third party shall constitute sufficient evidence as to the same.

**Place of Jurisdiction and Choice of Law**

55. Subject to the articles, to the Companies Acts and to other local legislative provisions that may be applicable in any particular relevant circumstances, all legal disputes between or involving one or more shareholders, directors, company secretary and the company, the disputed subject matter which is an issue or issues involving one or more transactions between some or all of the aforementioned parties and the company involving matters relating to these articles or governed by the Companies Acts, shall require that formal legal proceedings in each case be commenced in the legal jurisdiction where the company's principal operations are conducted, as evidenced from the filing and content of the taxation returns of the company during the previous three (3) years, or since the date of incorporation of the company in the case of a period being less than three (3) years, prior to the date of the filing of the relevant legal proceedings, and such proceedings shall be governed in accordance with the laws of the territory where the registered office of the company is situate, be that in England and Wales, or Northern Ireland, or Scotland.