UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>      Plaintiff,<br><br>    v.<br><br>BENJAMIN REYNOLDS,<br><br>      Defendant. | Case No. 1:19-cv-05631-MKV |

**DECLARATION OF JULIA C. COLARUSSO**
**PURSUANT TO 28 U.S.C. § 1746**

I, Julia C. Colarusso, hereby make the following declaration based upon my personal knowledge:

1. I am employed as a Trial Attorney in the Division of Enforcement of the Commodity Futures Trading Commission (the "Commission") in Washington, D.C. I have held this position since July 2019.

2. In accordance with Attachment A to the Court's Individual Rules of Practice in Civil Cases, I submit this Declaration pursuant to 28 U.S.C. § 1746 (2018) in support of the Commission's Motion for Entry of Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendant Benjamin Reynolds (the "Motion").

**I. BACKGROUND**

**Description of the Nature of the Claims**

3. On June 17, 2019, the Commission filed its Complaint in this action against Defendant Benjamin Reynolds ("Reynolds"), seeking injunctive and other equitable relief as

well as the imposition of civil monetary penalties for violations of Section 6(c)(1) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 9(1) (2018), and Commission Regulation ("Regulation") 180.1(a), 17 C.F.R. § 180.1(a) (2018).

4. The Commission's claim under Section 6(c)(1) of the Act is based on Reynolds's operation of a fraudulent virtual currency scheme through Control-Finance Limited ("Control-Finance"), an entity Reynolds incorporated in the United Kingdom and at all times solely owned and controlled, from at least May 2017 through October 2017.[1] As detailed in the Declarations of Dmitriy Vilenskiy and Kyong J. Koh that accompany the Motion and their supporting exhibits, Reynolds and Control-Finance solicited customers to deposit Bitcoin with them for the purpose of trading, falsely represented that they were earning trading profits on behalf of their customers, and then misappropriated the Bitcoin that was entrusted to them. Reynolds operated the scheme primarily through a public website, www.control-finance.com (the "Control-Finance Website"), various social media accounts (including Facebook, YouTube, and LinkedIn, among others), and email communications, all of which he used to make material misrepresentations and omissions to prospective and existing customers to entice them to open Control-Finance accounts and deposit their Bitcoin with him. These actions violated Section 6(c)(1) of the Act, which prohibits the use of any deceptive device or contrivance in connection with the sale of any commodity, including virtual currency, in interstate commerce.

5. The Commission's claim under Regulation 180.1(a) is based on this same unlawful conduct.

---

[1] The Complaint also originally named Control-Finance as a Defendant in this action. The Registrar of Companies for England and Wales had previously dissolved Control-Finance in February 2018 on the grounds that the company was no longer carrying on business. On April 3, 2020, the Commission filed a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) seeking to dismiss Control-Finance from the case given its status as a defunct entity. ECF No. 26. The Court granted that request on April 6, 2020. ECF No. 27. Accordingly, the default judgment would be applicable to Reynolds, the only remaining Defendant in the case.

### Description of the Basis for the Court's
### Subject Matter Jurisdiction

6. The Commission's single count for fraud arises under Section 6(c)(1) of the Act and Regulation 180.1(a). Accordingly, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, the Court possesses jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), which authorizes the Commission to seek injunctive and other relief in a U.S. district court against any person whenever it shall appear to the Commission that such person has engaged in any act or practice that violates the Act or Regulations.

### Description of the Basis for the Court's
### Exercise of Personal Jurisdiction Over Reynolds

7. Because Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), authorizes nationwide service of process with respect to requests for injunctive relief, courts use the entirety of the United States as the "relevant forum" for any minimum contacts analysis in cases where, as here, the Commission seeks such relief. *See CFTC v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 381 (S.D.N.Y. 2019) ("When the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process, . . . the Fifth Amendment applies, and the Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state." (quoting *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013))). The Court may exercise specific personal jurisdiction over Reynolds because he committed the violations of the Act and Regulations alleged in the Complaint within the United States, among

3

other places. Specifically, as detailed in the Declaration of Kyong J. Koh that accompanies the Motion, Reynolds solicited and collected Bitcoin from at least 169 customers who reside in the United States, including at least two customers who reside in New York. In addition, the Control-Finance Website—through which nearly every deposit transaction occurred—was registered to and hosted by a web service provider in San Francisco, California. Accordingly, Reynolds reached into the United States to solicit customers in connection with his scheme and could foresee being haled into court here.

8. The exercise of personal jurisdiction over Reynolds is also reasonable under the circumstances. The Commission has a congressional mandate to seek relief against individuals who are alleged to have participated in violations of the Act and Regulations. To hold that Reynolds is not subject to the jurisdiction of this Court, despite his solicitation of customers in the United States and misappropriation of their digital assets, would compromise the Commission's mandate and lead to an unjust outcome. *See S.E.C. v. Syndicated Food Servs. Int'l, Inc.*, No. 04-cv-1303, 2010 WL 3528406, at *3 (E.D.N.Y. Sept. 3, 2010) (noting court must consider the federal interest in adjudicating the dispute).

### Statement That the Defendant Is Not an Infant or Incompetent

9. Reynolds is an adult who, upon information and belief, is not incompetent and is not currently on active duty in any branch or division of the United States military.

### The Basis for Entering a Default Judgment, Including a Description of the Method and Date of Service of the Summons and Complaint

10. The basis for entering a default judgment against Reynolds is his failure to answer the Complaint or to otherwise appear to defend this action.

11. Despite diligent efforts, the Commission was unable to identify a specific address where Reynolds could be served with process. After exhausting all other options, the

Commission sought leave to serve Reynolds by publication in the United Kingdom (his last known country of residence) pursuant to Federal Rule of Civil Procedure 4(f)(3).[2] ECF Nos. 16-19. Judge Koeltl granted that request on January 7, 2020 (the "January 7 Order"). ECF No. 20. As required by the January 7 Order, the Commission published a notice about the case in *The Daily Telegraph*, a U.K. newspaper, once a week for four consecutive weeks, and the notice included the text of the Summons and a statement describing how a copy of the Complaint could be obtained. *See* ECF No. 21. The Commission then filed a Proof of Service with the Court on March 3, 2020. *Id*.

12. The January 7 Order obligated Reynolds to respond to the Complaint within twenty-one days from the date of the Commission's last publication in *The Daily Telegraph*. ECF No. 20. As set forth in the Commission's Proof of Service, the last publication occurred on February 8, 2020. ECF No. 21. Accordingly, Reynolds was required to respond to the Complaint on or before March 2, 2020. Reynolds failed to answer or otherwise respond to the Complaint, and, to date, he has not appeared to defend this action.

13. On April 3, 2020, pursuant to Federal Rule of Civil Procedure 55(a), the Commission filed a request for a Certificate of Default against Reynolds. ECF Nos. 24-25. The Clerk of Court entered Reynolds's default on April 6, 2020. ECF No. 28. On July 10, 2020, the Court ordered the Commission to file a motion for default judgment on or before August 20, 2020. ECF No. 31.

---

[2] The Commission's efforts to locate and serve Reynolds are detailed in the Memorandum of Law and Declaration of Julia C. Colarusso that were submitted in support of the Commission's Motion for Leave to Serve Reynolds by Publication. ECF Nos. 17 & 18. As set forth in those papers, it appears that Reynolds falsified his address in the application he filed with the U.K. government to incorporate Control-Finance and also actively worked to conceal his whereabouts by disabling the Control-Finance Website and the email addresses and telephone number he utilized in connection with the scheme at issue in this case. *See* ECF No. 18 ¶¶ 6, 9, 12, 15, 17.

## II. THE COMMISSION'S PROPOSED DAMAGES

14. Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), and Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2019), authorize the imposition of a civil monetary penalty ("CMP") equal to the higher of $185,242 per violation[3] or triple a defendant's monetary gain from each violation of the Act or Regulations. For the reasons stated more thoroughly in the Commission's Memorandum of Law submitted in support of the Motion, this case warrants the imposition of a CMP equal to three times the gross monetary gain to Reynolds. Accordingly, the Commission is requesting imposition of a CMP of $429,000,000, which is equal to three times the value of the Bitcoin he misappropriated from customers ($143,000,000). The Commission's process for identifying, quantifying, and valuing the Bitcoin that Reynolds misappropriated from customers of Control-Finance is detailed in the Declaration of Dmitriy Vilenskiy that accompanies the Motion. For purposes of calculating the gross monetary gain to Reynolds, the Bitcoin deposits at issue were valued as of October 31, 2017, the date by which customers were promised the return of their Bitcoin. This valuation figure is consistent with the proper measure of damages for misappropriation of assets of fluctuating value. *See Iglesias v. United States*, 848 F.2d 362, 364 (2d Cir. 1988) ("Where the subject of the conversion had a fluctuating value, the measure of damages was its value at the time of conversion or within a reasonable time after the discovery of the conversion, whichever is higher.").

15. The Commission is also requesting that the Court order Reynolds to pay restitution in the amount of $142,986,589, which represents the total funds he received from customers ($143,000,000) less the funds the Commission presently understands he returned to customers ($13,411.17). *See* Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A) (2018)

---

[3] Pursuant to 17 C.F.R. § 143.8(b)(1) (2019), the allowable inflation-adjusted CMP is $185,242 per violation of the Act (effective Jan. 13, 2020) for non-manipulation claims brought in federal injunctive actions under 7 U.S.C. § 13a-1.

(authorizing the Commission to seek and the Court to order "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)"); *see also CFTC v. Ross*, No. 09-cv-5443, 2014 WL 6704572, at *3 (N.D. Ill. Nov. 26, 2014) (calculating restitution "as the difference between what [a defendant] obtained and the amount customers have already received back"). The Declarations of Shane Boulware and Daniel Stratton, both of whom were customers of Reynolds and Control-Finance, identify small payments they received from Control-Finance. *See* Declaration of Shane Boulware (Ex. 3 to the Declaration of Kyong J. Koh) ¶ 27; Declaration of Daniel Stratton (Ex. 5 to the Declaration of Kyong J. Koh) ¶¶ 27-28. Mr. Boulware received $10,724.65 of the $32,000 he deposited with Control-Finance. In the case of Mr. Stratton, he received 0.54 Bitcoin from Control-Finance, which, as explained in the Declaration of Dmitriy Vilenskiy, the Commission has conservatively valued at $2,686.52. Taken together, those payments total $13,411.17.

16. The payments to Mr. Boulware and Mr. Stratton described in their Declarations (which are attached as exhibits to the Declaration of Kyong J. Koh) are the only instances of Reynolds returning funds to customers of which the Commission is presently aware, and the burden would fall on Reynolds to counter the Commission's calculations. *See F.T.C. v. Instant Response Sys., LLC*, No. 13-cv-00976, 2015 WL 1650914, at *11 (E.D.N.Y. Apr. 14, 2015) (holding that in calculating restitution under the FTC Act and related laws, the government must only "reasonably approximate[]" the amount of customers' net losses, and then the burden shifts to the defendant to show that those figures are inaccurate (quoting *FTC v. Verity Int'l*, 443 F.3d 48, 67 (2d Cir. 2006))). As the Second Circuit has recognized, "any risk of uncertainty . . . should fall on the wrongdoer whose illegal conduct created that uncertainty." *S.E.C. v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996) (quoting *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995)) (discussing

disgorgement under federal securities laws).

17. The Commission also seeks to recover post-judgment interest on any restitution and civil monetary penalty amounts ordered by the Court. *See* 28 U.S.C. § 1961(a) (2018). Post-judgment interest accrues at the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment. *Id*.

18. As detailed more thoroughly in the Commission's Memorandum of Law submitted in support of the Motion, an inquest into damages is not necessary in this case. "Although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of admissible evidence, a hearing is unnecessary so long as (1) the [c]ourt has determined the proper rule for calculating damages, and (2) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment." *CFTC v. 4X Solutions, Inc.*, No. 13-cv-2287, 2015 WL 9943241, at *2 (S.D.N.Y. Dec. 28, 2015) (citations omitted) (report and recommendation), *adopted by* 2016 WL 397672 (S.D.N.Y. Jan. 29, 2016). The court may rely on affidavits or documentary evidence in the record to determine the appropriate sum rather than hold an evidentiary hearing. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Here, a hearing is not necessary because all damages the Commission seeks are substantiated in detail by the declarations and exhibits that accompany the Motion.

19. No part of the judgment sought has been paid, other than as indicated in the Motion.

### III. EXHIBITS

20. Attached hereto as Exhibit 1 is a true and correct copy of the Commission's Complaint in this action (ECF No. 1).

21. Attached hereto as Exhibit 2 is a true and correct copy of the Proof of Service of the Summons and Complaint (ECF No. 21).

22. Attached hereto as Exhibit 3 is a true and correct copy of the Clerk's Certificate of Default (ECF No. 28).

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 20th day of August, 2020.

s/Julia C. Colarusso<br>
Julia C. Colarusso