UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>      Plaintiff,<br><br>    v.<br><br>BENJAMIN REYNOLDS,<br><br>      Defendant. | Case No. 1:19-cv-05631-MKV |

**DECLARATION OF DMITRIY VILENSKIY
PURSUANT TO 28 U.S.C. § 1746**

I, Dmitriy Vilenskiy, hereby make the following declaration:

## I. BACKGROUND

1. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

2. I am employed as a Senior Futures Trading Investigator in the Division of Enforcement ("Division") of the Commodity Futures Trading Commission ("Commission"). I have held this position since September 2009.

3. Prior to joining the Commission, I was a Regulatory Analyst at the Financial Industry Regulatory Authority. I also worked for three years for the U.S. Department of Justice, Criminal Division, on special assignment from the Commission as a Detailee Investigator. I earned a Bachelor of Science degree in Finance and International Business from the University of Maryland, College Park, Robert H. Smith School of Business, and a certification in Forensic Accounting from Georgetown University. I am also a Certified Fraud Examiner.

4. In June 2020, I earned two certifications related to analysis and tracing of virtual-

currency transactions:  the Chainalysis Reactor Certification and CipherTrace Certified Examiner.

5. My responsibilities as a Senior Futures Trading Investigator include the investigation of registered and unregistered commodity trading firms and individuals located throughout the United States and abroad, in order to ensure compliance with and enforcement of the Commodity Exchange Act and the rules and regulations promulgated thereunder. Throughout my career with the Division, I have analyzed and reviewed bank records, commodity futures and foreign currency trading records, virtual currency blockchain records, and other financial documents.  Over the course of my career, I have been involved in more than 100 investigations in which I took primary investigatory responsibility.

6. I am one of the Futures Trading Investigators assigned to the Commission's investigation and litigation of this matter.

7. I understand that the Commission has filed a Motion for Entry of Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendant Benjamin Reynolds (the "Motion").  I submit this Declaration pursuant to 28 U.S.C. § 1746 in support of the Commission's Motion and, in particular, in support of the restitution and civil monetary penalty amounts that the Commission seeks.

## II.   BITCOIN

8. For purposes of this Declaration, I use the term "virtual currency" to refer to a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value.  In contrast to real or traditional currency (i.e., the coin and paper money of a country), virtual currency does not have legal tender status in most jurisdictions.

9. The most commonly described type of virtual currency is called Bitcoin

(BTC), but many other virtual currencies are actively traded on electronic platforms in the United States and worldwide.

10. Virtual currencies are often described as "cryptocurrencies" by purchasers and sellers because typically the virtual currency in question uses cryptographic protocols to secure transactions in that asset despite being recorded on publicly available decentralized ledgers. Many virtual currencies, including Bitcoin, use such decentralized networks to track transactions between persons who are denominated only by publicly visible strings of characters called keys, rather than individual names, and who are otherwise anonymous to each other.

11. Blockchain, a form of distributed ledger technology, underpins many virtual currencies. Blockchain transactions are captured in single blocks at a time, which independent operators (known as "miners") confirm by performing algorithmic proofs of work and for which they are usually rewarded a sum of the virtual currency in question. The public nature of the decentralized ledger allows people to recognize the transfer of virtual currencies from the account of one user, called a "wallet," to another without requiring any central intermediary that both users must trust.

12. For purposes of this Declaration, I use the term "wallet address" to refer to a 26-35 digit alphanumeric public key that operates similarly to a bank account and can be used to send and receive virtual currency. For readability, wallet addresses are identified in this Declaration by their last four digits. While anyone can send virtual currencies to a particular wallet address, transferring virtual currencies out of a wallet address requires a private key held by the owner of the wallet address. Unlike bank accounts, wallet addresses are public information and are recorded on the blockchain for viewing by members of the public.

13. Virtual currency trading includes the trading of virtual currency futures

contracts, swaps, and other derivatives. Currently, for example, Bitcoin underlies futures contracts offered at the Cboe Futures Exchange and the Chicago Mercantile Exchange, both of which are registered with the Commission as "designated contract markets." Since at least 2015, exchanges outside of the United States, such as Bitmex, which is located in Hong Kong and owned by a Seychelles company, have offered futures contracts on Bitcoin and other virtual currencies, including Ether (ETH), Ethereum Classic (ETC), and Litecoin (LTC).

### III. SUMMARY OF FINDINGS

14. As part of my investigatory responsibilities in this matter, I analyzed the amount of Bitcoin customers deposited with Defendant Benjamin Reynolds ("Reynolds") and his entity, Control-Finance Limited ("Control-Finance"), the movement of that Bitcoin via blockchain transactions, and the valuation of that Bitcoin at various points in time.

15. My analysis of documents obtained by the Commission during its investigation as well as other information provided by customers of Reynolds and Control-Finance revealed that, from at least May 1, 2017 through October 31, 2017 (the "Relevant Period"), Reynolds and Control-Finance appear to have received at least 22,190.542 Bitcoin from customers, which reached a valuation of at least $143 million by October 31, 2017.

16. Reynolds and Control-Finance moved the Bitcoin received from their customers to wallet addresses under their sole control by executing thousands of blockchain transactions. Reynolds and Control-Finance routed the great majority of these transactions through wallet addresses that they established at CoinPayments, Inc. ("CoinPayments"), a virtual currency payment processor organized in Vancouver, Canada.

## IV.   DOCUMENTS REVIEWED

17. During the course of investigating this matter, I participated in telephonic interviews of individuals who transferred Bitcoin to Reynolds and Control-Finance. I also reviewed and analyzed the following documents and information:

    a. Materials provided by certain individuals who invested Bitcoin with Reynolds and Control-Finance;

    b. Transfers of Bitcoin between blockchain wallet addresses used by Reynolds and Control-Finance and by customers of Control-Finance;

    c. Information made available through, and documents obtained from, the British Columbia Securities Commission ("BCSC"), including complete transactional history logs and other records from CoinPayments for all accounts associated with wallet addresses used by Reynolds and Control-Finance; and

    d. Open-source and commercially obtained blockchain records of Bitcoin transfers.

## V.   FINDINGS

18. As stated above, along with other Division staff, I participated in telephonic interviews with certain customers of Reynolds and Control-Finance. During the course of those interviews and in other communications, many of the customers disclosed the specific wallet addresses to which Reynolds and Control-Finance had directed them to transfer their Bitcoin deposits. Division staff also learned of additional wallet addresses utilized by Reynolds and Control-Finance through public statements made on social media platforms by other individuals who had invested Bitcoin with Reynolds and Control-Finance.

19. In collaboration with other Division staff, I compiled a list of the wallet addresses that were owned, controlled, and operated by Reynolds and Control-Finance. I then used a commercially available blockchain tracking software to track the flow of customer Bitcoin that was transferred to those wallet addresses. My analysis revealed that the majority of the Bitcoin flowed to wallet addresses associated with six accounts established at CoinPayments.

20. The Commission then sent an information request to CoinPayments through the BCSC. The Commission requested account opening documentation, communications, and all transactional data associated with Reynolds, Control-Finance, and the wallet addresses they owned and controlled. The information provided by CoinPayments identified six accounts associated with the wallet addresses used by Reynolds and Control-Finance to direct customer deposits.

21. Based on the documents and information I reviewed, I determined that, during the Relevant Period, Reynolds and Control-Finance created unique, often-times single-use wallet addresses ("Single-Use Address(es)") to receive customers' Bitcoin deposits. In most cases, Reynolds and Control-Finance used each Single-Use Address for one pair of transactions: (i) to receive a Bitcoin deposit from a customer, and (ii) to route the customer's deposit to one of a number of pooled wallet addresses ("Pool Address(es)") into which Reynolds and Control-Finance transferred Bitcoin from hundreds of Single-Use Addresses.

### Single-Use Addresses and Pool Addresses

22. Reynolds and Control-Finance typically created a new Single-Use Address for every customer deposit. In typical transactions, customers logged into the Internet website www.control-finance.com (the "Control-Finance Website") and accessed the deposit webpage. The Control-Finance Website then generated a unique Single-Use Address for the specific

deposit. After a customer deposited Bitcoin with the Single-Use Address, Reynolds and Control-Finance routed the deposit out of the Single-Use Address and into a Pool Address, where the deposit was combined with numerous deposits by other customers.

23. Reynolds and Control-Finance then transferred the Bitcoin in each Pool Address to other wallet addresses under their control, including wallet addresses held at CoinPayments, among other payment processors.

24. Reynolds and Control-Finance typically executed "split" payments when transferring customers' Bitcoin out of Single-Use Addresses and into Pool Addresses. To execute a split payment, they transferred the great majority of a customer's Bitcoin deposit out of a Single-Use Address and into a Pool Address. They simultaneously transferred the remainder of the customer's Bitcoin deposit out of the Single-Use Address and into another wallet address that held a relatively small Bitcoin balance.

25. For example, on August 5, 2017, customer M*G* sent approximately 3.088 Bitcoin to wallet *R6xB per funding instructions that he received from Control-Finance. Utilizing forensic blockchain tracing techniques and a specialized commercially available service, I determined that wallet address *R6xB was directly associated with 164 other wallet addresses, which combined as a cluster. This cluster received approximately 62.29 Bitcoin from numerous sources, including customer M*G*.

26. The Bitcoin in the aforementioned cluster was then split: approximately 15.578 Bitcoin was sent to wallet address *uk1x at CoinPayments and 46.712 Bitcoin was sent to another address, which made a series of split payments until most of the Bitcoin was also sent to *uk1x. A true and accurate graph that I made to illustrate these transfers using a commercial service is attached to this Declaration as Exhibit 1.

**<u>Valuation</u>**

27. Based on the documents and information I reviewed, I determined that on May 28, 2017, Reynolds and Control-Finance established six accounts at CoinPayments, including an account known as User ID *294. My analysis revealed that they used the six accounts to establish at least 47 Pool Addresses into which they received 22,190.542 Bitcoin.

28. To assess the value of the 22,190.542 Bitcoin that customers transferred to Reynolds and Control-Finance, the Commission relied on historical pricing data that was published on CoinMarketCap, https://www.coinmarketcap.com/. CoinMarketCap is a website that calculates the market capitalization of multiple virtual currencies by analyzing the price and circulating supply of the currencies. In my experience, CoinMarketCap is a reputable, widely-used reference tool in the virtual currency industry and has been cited as a source of information in articles published by numerous financial newspapers, including *The Financial Times* and *The Wall Street Journal*.

29. In order to assess the price of virtual currencies, CoinMarketCap utilizes data from virtual currency markets. For example, to establish its published Bitcoin price, CoinMarketCap utilizes data from numerous sources, including some of the world's most popular virtual currency exchanges.

30. CoinMarketCap maintains and publishes the daily opening, closing, highest, and lowest price for virtual currencies. For the purpose of calculating the value of the Bitcoin that customers deposited with Reynolds and Control-Finance during the Relevant Period, the Commission has utilized the October 31, 2017 closing price for Bitcoin. I understand that October 31, 2017 is the date by which Control-Finance had represented to customers it would return their Bitcoin deposits to them. As published on CoinMarketCap's website, the closing

price for Bitcoin on October 31, 2017 was $6,470. Accordingly, I determined that the 22,190.542 Bitcoin that customers transferred to Reynolds and Control-Finance wallet addresses at CoinPayments had a value of approximately $143 million as of October 31, 2017.

### CoinPayments Address *uk1x

31. My analysis revealed that of the Pool Addresses Reynolds and Control-Finance established at CoinPayments, they used the following Pool Address most frequently: CoinPayments Address *uk1x, through which Reynolds and Control-Finance received 5,184.65 Bitcoin.

32. During the Relevant Period, Reynolds and Control-Finance used CoinPayments Address *uk1x in at least two ways: (i) as a Pool Address, in that they used CoinPayments Address *uk1x to receive Bitcoin from numerous Single-Use Addresses, and (ii) as a repository for consolidating Bitcoin deposits from other Pool Addresses.

33. During the Relevant Period, Reynolds and Control-Finance transferred customer Bitcoin from at least the following five Pool Addresses into CoinPayments Address *uk1x: *b2p5, *Tebs,*Q4DM, *fhB2, and *qEpB.

34. My analysis further revealed that throughout the Relevant Period, Reynolds and Control-Finance often executed circuitous blockchain transactions to move customer Bitcoin into CoinPayments Address *uk1x. *See* Ex. 1.

### Stratton Valuation

35. I understand that Mr. Daniel Stratton, a customer of Reynolds and Control-Finance, has submitted a Declaration in support of the Motion in which he states that he received 0.54 Bitcoin from Control-Finance between August and September 2017. In consulting the CoinMarketCap website, I have determined that the highest price Bitcoin reached between

August 1, 2017 and September 30, 2017 was $4,975.04.  The value of 0.54 Bitcoin at that price would have been $2,686.52.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of August, 2020.

_____
Dmitriy Vilenskiy
Senior Futures Trading Investigator