**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-05631-MKV |
| BENJAMIN REYNOLDS, | |
| Defendant. | |

**[AMENDED PROPOSED] FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANT BENJAMIN REYNOLDS**

On June 17, 2019, Plaintiff Commodity Futures Trading Commission ("Commission" or "Plaintiff") filed a Complaint charging Defendant Benjamin Reynolds ("Reynolds" or "Defendant") with violating Section 6(c)(1) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 9(1) (2018), and Commission Regulation ("Regulation") 180.1(a), 17 C.F.R. § 180.1(a) (2020). ECF No. 1. Pursuant to Federal Rule of Civil Procedure 4(f)(3), Reynolds was properly served with process by publication on January 18, 2020, January 25, 2020, February 1, 2020, and February 8, 2020. ECF No. 21. Reynolds failed to appear or answer the Complaint, and the Clerk of Court entered his default on April 6, 2020. ECF No. 28.

The Commission has moved this Court to grant final judgment by default against Reynolds, order permanent injunctive relief, and impose a restitution obligation and a civil monetary penalty. The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its Motion, other written submissions filed with the Court, and the record in this case, and being fully advised in the premises, it is hereby:

**ORDERED** that the Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Reynolds is **GRANTED**.

Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein.

## I.   FINDINGS OF FACT

### A.   The Parties

1.      Plaintiff **Commodity Futures Trading Commission** is an independent regulatory agency that is charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26 (2018), and Regulations promulgated thereunder, 17 C.F.R. pts. 1.1-190.10 (2020).  Compl. ¶ 17.

2.       Defendant **Benjamin Reynolds** has represented himself to be a United Kingdom national residing in Manchester, England.  He is the sole Director and owner of Control-Finance Limited ("Control-Finance"), a private limited company that Reynolds incorporated in the United Kingdom on September 8, 2016.  Reynolds has never been registered with the Commission.  Compl. ¶ 19; Declaration of Kyong J. Koh ("Koh Decl.") ¶¶ 11-12.

### B.   Defendant's Fraudulent Scheme in Violation of Section 6(c)(1) of the Act and Regulation 180.1(a)

3.      From at least May 2017 through October 2017 (the "Relevant Period"), Reynolds and Control-Finance operated a fraudulent virtual currency scheme by soliciting customers to deposit Bitcoin with them for the purpose of trading, falsely representing that they were earning trading profits on behalf of their customers, and then misappropriating the Bitcoin that was

entrusted to them.  Compl. ¶¶ 1-10, 25-91.

4.      Reynolds's solicitations to potential customers included false and misleading representations and omissions of material facts—in short, lies and deceit—about the profitability and safety of investing Bitcoin with Control-Finance.  Compl. ¶ 46.

5.      Reynolds fraudulently induced customers to purchase Bitcoin, a virtual currency, from third-party vendors and to thereafter transfer the Bitcoin to Control-Finance for trading in virtual currency markets.  Compl. ¶¶ 2, 25; Declaration of Shane Boulware ("Boulware Decl.") ¶¶ 6-7, 11-12, 17-19; Declaration of Daniel Stratton ("Stratton Decl.") ¶¶ 3-10, 20-22.

6.      Reynolds operated the scheme primarily through a public website, www.control-finance.com (the "Control-Finance Website"), various social media accounts (including Facebook, YouTube, and LinkedIn, among others), and email communications, all of which he used to promote his supposed trading methods, abilities, and profits in order to entice prospective and existing customers to open Control-Finance accounts and deposit their Bitcoin with him. Compl. ¶¶ 26-61.  The Control-Finance Website—through which nearly every deposit transaction occurred—was registered to and hosted by a web service provider in the United States.  Compl. ¶¶ 26, 62; Koh Decl. ¶ 12.

7.      Customers who were enticed to deposit Bitcoin with Control-Finance were provided a deposit confirmation webpage through the Control-Finance Website.  Compl. ¶ 41; Koh Decl. ¶ 8(a).

8.      Each deposit confirmation webpage identified the quantity of Bitcoin deposited and the value of that Bitcoin in U.S. dollars.  In addition, each deposit confirmation webpage identified the purported daily "Profit" that Control-Finance promised to pay to customers on each deposit.  Compl. ¶ 41.

9.     Reynolds solicited customers by making false and misleading claims and omissions about the performance of Control-Finance.  Among other things, Reynolds and Control-Finance:

a.     falsely represented on the Control-Finance Website and on Control-Finance's social media accounts that they traded customers' Bitcoin deposits in virtual currency markets and employed expert virtual currency traders who managed the deposits and generated guaranteed daily and monthly trading profits for customers (Compl. ¶¶ 3, 47(a)-(d); Koh Decl. ¶¶ 8(e), 14-22, 32-33);

b.     falsely represented on the Control-Finance Website and on Control-Finance's social media accounts that they took security measures to preserve customers' investments and practiced risk diversification and trade allocation strategies to protect customers from volatility (Compl. ¶¶ 47(e)-(h); Koh Decl. ¶¶ 21(d)-(g));

c.     fabricated weekly "Trade Reports" on the Control-Finance Website to falsely reflect virtual currency trading transactions that had not occurred and trading profits that did not exist (Compl. ¶¶ 4, 50-54; Koh Decl. ¶¶ 8(f), 28-30; Stratton Decl. ¶¶ 17-19);

d.     constructed an elaborate affiliate marketing network that relied on fraudulently promising to pay outsized referral profits, rewards, and bonuses to encourage customers to refer new customers to Control-Finance (Compl. ¶¶ 6-7, 34-40, 55-57; Koh Decl. ¶¶ 8(c), 24-26; Stratton Decl. ¶¶ 11-16; Declaration of Michael Anthony ("Anthony Decl.") ¶¶ 3-

4

5);

e.    created sham accounts for customers on the Control-Finance Website that

falsely reflected growing balances when in reality those accounts were

empty (Compl. ¶¶ 27, 41-45);

f.    falsely represented on the Control-Finance Website that customers could

withdraw their profits "at any time" (Compl. ¶ 41);

g.    failed to disclose that they misappropriated customers' Bitcoin deposits

(Compl. ¶ 48); and

h.    failed to disclose that they diverted portions of new customers' Bitcoin

deposits to other customers in the manner of a "Ponzi" scheme (Compl. ¶¶

5, 45, 48, 78-81; Koh Decl. ¶¶ 8(d)-(e)).

10.    These statements were false and misleading representations and omissions of

material facts.  In reality, Control-Finance's purported trading results were illusory, and

Reynolds and Control-Finance did not trade Bitcoin on customers' behalf, did not employ expert

traders or specialists, did not pay referral rewards or bonuses, and retained customers' Bitcoin

deposits for their own personal use.  Compl. ¶¶ 27, 41-61; Koh Decl. ¶ 8(e), 23, 27, 31, 34.

11.    Reynolds also offered a profit "reinvestment" option to create disincentives to

account withdrawals.  Compl. ¶ 44; Boulware Decl. ¶¶ 13, 21.  By offering customers the option

to reinvest their "profits" into a program that on its surface appeared to be highly profitable,

Reynolds concealed and prolonged his fraud by convincing customers that their deposits were

rising in value, causing customers to leave their deposits in their Control-Finance accounts rather

than request withdrawals.  Compl. ¶ 44.

12.    Reynolds abruptly terminated operations in September 2017 by removing the

Control-Finance Website from the Internet and deleting advertising content from Control-Finance's social media accounts.  Compl. ¶¶ 8, 82; Koh Decl. ¶ 35; Boulware Decl. ¶ 24; Anthony Decl. ¶ 6; Stratton Decl. ¶ 29.

13.     In an attempt to conceal the scheme and lull customers into believing that the shutdown was temporary, Reynolds fraudulently represented through email and Facebook that Control-Finance would resume operations and make all customers whole by returning their Bitcoin deposits by late October 2017.  Compl. ¶¶ 9, 33, 83-91; Boulware Decl. ¶¶ 24-26, 28-34; Anthony Decl. ¶¶ 7-8; Stratton Decl. ¶¶ 30-43.

14.     Reynolds instead misappropriated customers' Bitcoin through thousands of circuitous blockchain transactions.  Compl. ¶¶ 10, 90.

## C.     Misappropriation of Customers' Bitcoin

15.     During the Relevant Period, Reynolds and Control-Finance ultimately solicited and misappropriated at least 22,190.542 Bitcoin, valued at approximately $143,000,000, from more than 1,000 customers worldwide, including at least 169 who reside within the United States.  Compl. ¶¶ 1, 8, 25, 40, 62-69; Koh Decl. ¶ 8(b); Declaration of Dmitriy Vilenskiy ("Vilenskiy Decl.") ¶¶ 15, 27-30.

16.     In typical transactions, customers logged into the Control-Finance Website and accessed the deposit webpage.  The Control-Finance Website then generated a unique single-use wallet address ("Single-Use Address") for the specific deposit.  After a customer deposited Bitcoin with the Single-Use Address, Reynolds and Control-Finance routed the deposit out of the Single-Use Address and into one of a number of pooled wallet addresses ("Pool Address") under their control, where the deposit was combined with numerous deposits by other customers. Reynolds and Control-Finance then transferred the Bitcoin in each Pool Address to other wallet

addresses under their control.  Compl. ¶¶ 62-77; Vilenskiy Decl. ¶¶ 15-16, 18-26, 31-34.

17.     As a result, Control-Finance's customers have lost most if not all of their invested funds.  Compl. ¶¶ 62-77; Koh Decl. ¶¶ 8(e), 9; Declaration of David Regan ¶¶ 5-7; Declaration of Alvin Lewis ¶¶ 4-7; Boulware Decl. ¶ 27; Anthony Decl. ¶ 9; Stratton Decl. ¶¶ 28, 43.

18.     In accordance with the proper measure of damages for misappropriation of assets of fluctuating value, the Commission has valued the customer deposits at issue using Bitcoin's closing price on October 31, 2017—the date by which customers were promised the return of their Bitcoin.  Vilenskiy Decl. ¶ 30; *see Iglesias v. United States*, 848 F.2d 362, 364 (2d Cir. 1988).[1]

19.     Reynolds returned only $13,411.17 to customers.  Boulware Decl. ¶ 27; Stratton Decl. ¶¶ 27-28; Declaration of Julia C. Colarusso ("Colarusso Decl.") ¶ 15.  The difference between the amount Reynolds solicited and accepted from customers ($143,000,000) and the amount he returned to customers ($13,411.17) is $142,986,589.

## II.     CONCLUSIONS OF LAW

### A.     Jurisdiction and Venue

20.     This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), which provides that whenever it shall appear to the Commission that a person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder, the Commission may bring an action for injunctive relief in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule,

---

[1] The Commission assessed the value of the Bitcoin that customers transferred to Reynolds and Control-Finance by relying on historical pricing data that was published on the website known as CoinMarketCap, https://coinmarketcap.com/.  Vilenskiy Decl. ¶¶ 28-30.  CoinMarketCap is a reliable valuation tool for these purposes.  *See CFTC v. McDonnell*, 332 F. Supp. 3d 641, 670-71 (E.D.N.Y. 2018).

regulation or other thereunder.  This Court also has jurisdiction over this action pursuant to 28

U.S.C. § 1331 (2018) (federal question) and 28 U.S.C. § 1345 (2018) (United States as plaintiff).

21.     With respect to personal jurisdiction, because Section 6c(e) of the Act, 7 U.S.C. §

13a-1(e) (2018), authorizes nationwide service of process with respect to requests for injunctive

relief, the United States is the "relevant forum" for the minimum contacts analysis.  *CFTC v.*

*TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 381 (S.D.N.Y. 2019).  The Court may exercise specific

jurisdiction over Reynolds because he committed the violations of the Act and Regulations

alleged in the Complaint within the United States, among other places.  Specifically, Reynolds

solicited and collected Bitcoin from customers residing in this District and elsewhere in the

United States.  Compl. ¶¶ 16, 25; Koh Decl. ¶ 8(b); Colarusso Decl. ¶ 7.

22.     In addition, the Complaint alleges that Reynolds violated the Act through use of a

website hosted and registered with an Internet hosting company located in the United

States.  Reynolds used this U.S.-hosted website to make material misrepresentations to

prospective and existing customers to entice them to open Control-Finance accounts and deposit

their Bitcoin with the company.  Reynolds also used the Control-Finance U.S.-based Website to

provide customers with nominal, sham account balances and profit figures.  In reality, the

illusory account balances and profit statements that Reynolds provided to customers were not

backed up by actual Bitcoin, because Reynolds had misappropriated the Bitcoin for his own

use.  Compl. ¶¶ 26-27, 41-57, 62-81.  The Complaint thus properly alleges a "domestic

application" of the Act because the relevant, fraudulent conduct occurred on a website in the

United States.  *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 104 (2d Cir. 2019), *cert.*

*denied sub nom. Atl. Trading USA, LLC v. BP P.L.C.*, 141 S. Ct. 113 (2020) (citing *RJR Nabisco,*

*Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016)).  Further, this Court has jurisdiction

because the allegations in the Complaint indicate that the violations were extensively perpetrated through the knowing use of a website hosted in the United States, and thus Reynolds "purposely availed" himself of the privilege of conducting business in the United States.  *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 726-27 (2d Cir. 2012) (although defendant committed alleged torts from Canada, she met minimal contact due process test for jurisdiction because she "purposefully availed herself of the privilege of conducting activities within Connecticut" by knowingly accessing her employer's Connecticut server and email system).  Reynolds has failed to appear in this case, and thus has not raised any challenges to the Court's jurisdiction or the application of the Act to these facts.

23.     Venue also properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), because Reynolds transacted business in this District through his solicitation of customers and committed acts and practices in violation of the Act in this District. Compl. ¶¶ 16, 25; Koh Decl. ¶ 8(b).

**B.     Defendant Committed Fraud in Connection with Contracts of Sale of Bitcoin, a Commodity in Interstate Commerce, in Violation of Section 6(c)(1) of the Act and Regulation 180.1(a).**

24.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Commission Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2020), make it unlawful for any person, in connection with contracts of sale of any commodity in interstate commerce, including virtual currencies such as Bitcoin, to intentionally or recklessly:  (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon

any person.  Virtual currencies such as Bitcoin are encompassed in the definition of "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2018).  *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018), *reconsideration denied*, 321 F. Supp. 3d 366 (E.D.N.Y. 2018); *CFTC v. Gelfman Blueprint, Inc.*, No. 17-cv-7181, 2018 WL 6320656, at *8 (S.D.N.Y. Oct. 16, 2018); *CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 495-98 (D. Mass. 2018) (denial of motion to dismiss).

25.     By the conduct described above and in the Complaint, Reynolds, acting through Control-Finance, intentionally or recklessly, in connection with contracts of sale of a commodity in interstate commerce, namely the virtual currency Bitcoin:  (1) used or employed, or attempted to use or employ, a manipulative device, scheme, or artifice to defraud; (2) made, or attempted to make, untrue or misleading statements of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; and (3) engaged, or attempted to engage, in an act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

26.     As set forth in the Complaint, Reynolds cheated and defrauded, and attempted to cheat and defraud, customers in connection with contracts of sale of Bitcoin, a commodity in interstate commerce.  Among other things, he falsely represented to customers that (1) he traded their Bitcoin deposits in the virtual currency markets; (2) he employed specialized virtual currency traders to manage customers' deposits; (3) all Bitcoin deposited with Control-Finance yielded guaranteed daily and monthly profits; and (4) he practiced risk diversification and trade allocation strategies to protect customers from volatility.  He also misappropriated customer Bitcoin and never achieved the advertised results with Control-Finance customer deposits.  He further concealed and perpetuated the fraud by falsely stating that customers' Bitcoin deposits

would be returned to them by the end of October 2017.

**C.     An Injunction Is Warranted.**

27.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Reynolds will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

### III.     PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT**:

28.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), Defendant and all persons in active concert or participation with Defendant who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained, enjoined, and prohibited from directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, intentionally or recklessly:

      a.     using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud;

      b.     making, or attempting to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; and

      c.     engaging, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person;

in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and/or Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2020).

29.     Defendant and all persons in active concert or participation with Defendant who receive actual notice of this Order by personal service or otherwise, are also hereby permanently restrained, enjoined, and prohibited from directly or indirectly:

      a.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

      b.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020)), and/or the virtual currency Bitcoin for their own personal account or for any account in which they have a direct or indirect interest;

      c.     Having any commodity interests and/or the virtual currency Bitcoin traded on their behalf;

      d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests and/or the virtual currency Bitcoin;

      e.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests and/or the virtual currency Bitcoin;

      f.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and/or

g.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17

C.F.R. § 3.1(a) (2020)), agent or any other officer or employee of any

person (as that term is defined in 7 U.S.C. § 1a(38) (2018)), registered,

exempted from registration or required to be registered with the

Commission except as provided for in 17 C.F.R. § 4.14(a)(9) (2020).

## IV.     RESTITUTION AND CIVIL MONETARY PENALTY

**IT IS FURTHER ORDERED THAT**:

### A.     Restitution

30.     Pursuant to Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A) (2018), and

given that the Commission has properly asserted a domestic application of the Act as discussed

above, Defendant shall pay restitution in the amount of one hundred forty two million nine

hundred eighty six thousand five hundred eighty nine dollars (**$142,986,589**) ("Restitution

Obligation").  If the Restitution Obligation is not paid immediately, post-judgment interest shall

accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be

determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant

to 28 U.S.C. § 1961 (2018).

31.     To effect payment of the Restitution Obligation and the distribution of any

restitution payments to customers of Control-Finance, the Court appoints the National Futures

Association ("NFA") as Monitor ("Monitor").  The Monitor shall receive restitution payments

from Defendant and make distributions as set forth below.  Because the Monitor is acting as an

officer of this Court in performing these services, the NFA shall not be liable for any action or

inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

32.     Defendant shall make Restitution Obligation payments, and any post-judgment

interest payments, under this Order to the Monitor in the name "Benjamin Reynolds Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

33.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to customers of Control-Finance identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Paragraph 40 below.

34.     Defendant shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendant's customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendant shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

35.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defendant's customers during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

36.     The amounts payable to each customer shall not limit the ability of any customer of proving that a greater amount is owed from Defendant or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that may exist under state or common law.

37.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defendant's who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defendant to ensure continued compliance with any provision of this Order and to hold Defendant in contempt for any violations of any provision of this Order.

38.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.     Civil Monetary Penalty**

39.     Pursuant to Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), Defendant shall pay a civil monetary penalty in the amount of four hundred twenty nine million dollars (**$429,000,000**) ("CMP Obligation").  If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this

15

Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

40.     Defendant shall pay the CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> Telephone: (405) 954-6569
> Fax: (405) 954-1620
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies the payor and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

**C.     Provisions Related to Monetary Sanctions**

41.     Partial Satisfaction:  Acceptance by the Commission or the Monitor of any partial payment of Defendant's Restitution Obligation or CMP Obligation shall not be deemed a waiver of Defendant's obligation to make further payments pursuant to this Order, or a waiver of the

Commission's right to seek to compel payment of any remaining balance.

## V.      MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED THAT**:

42.      Notice:  All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested as follows:

Notice to Commission:

Paul G. Hayeck
Deputy Director
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581

Notice to Monitor:

Office of Administration
National Futures Association
300 South Riverside Plaza, Suite 1800
Chicago, Illinois 60606-3447

All such notices to the Commission or the NFA shall reference the name and docket number of this action.

43.      Change of Address/Phone:  Until such time as Defendant satisfies in full his Restitution Obligation and CMP Obligation as set forth in this Order, Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

44.      Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, the remainder of the Order and the application of its provision to any other person or circumstance shall not be affected by the holding.

45.      Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Order shall be binding upon Reynolds, upon any person under his authority or

control, and upon any person who receives actual notice of this Order, by personal service, email, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Reynolds.

46.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendant to modify, or for relief from, the terms of this Order.

*     *     *

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Order of Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendant Benjamin Reynolds* forthwith and without further notice.

**IT IS SO ORDERED** on this _____ day of _____, 2021.


_____
UNITED STATES DISTRICT JUDGE